IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                  :

Tom Brady, Drew Brees, Vincent Jackson, Ben  :
Leber, Logan Mankins, Peyton Manning, Von  :
Miller, Brian Robison, Osi Umenyiora, and   :
Mike Vrabel, individually, and on behalf of all  :
others similarly situated,                 :      No. 0:11-cv-00639-SRN-JJG
                Plaintiffs,      :
                                  :

      v.                               :
                                  :

NATIONAL FOOTBALL LEAGUE, et al.,     :
                                  :
                Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ......................................................................................................3

I.    PLAINTIFFS HAVE OVERWHELMINGLY ESTABLISHED A
"SERIOUS QUESTION" ON THE MERITS ...............................................3

    A.    Defendants' Illegal "Lockout" Is Not Protected By Any Labor
Exemption ......................................................................................3

        1.    There is No Labor Exemption in the Absence of a Union ........ 3

        2.    The Players' Disclaimer Ended the Union ................................ 4

        3.    Defendants Waived Their Purported "Sham" Defense ............. 8

    B.    This Court Has Rejected Defendants' Overbroad View Of The
Norris-LaGuardia Act ......................................................................10

    C.    This Antitrust Case Presents No Issues Within The Primary
Jurisdiction Of The NLRB ................................................................13

II.    THE EQUITIES DECIDEDLY FAVOR ENJOINING THE PER SE
UNLAWFUL "LOCKOUT" ........................................................................15

    A.    Plaintiffs Are Suffering Irreparable Harm .........................................15

    B.    Defendants Face No Cognizable Hardship .......................................16

    C.    Public Interest ..................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Am. Needle v. NFL,
    130 S. Ct. 2201 (2010) ................................................................16

Boise Cascade Int'l, Inc. v. N. Minn. Pulpwood Producers Ass'n,
    294 F. Supp. 1015 (D. Minn. 1968) ............................................11

Bowman v. NFL,
    402 F. Supp. 754 (D. Minn. 1975) ..............................................15

Boys Markets, Inc. v. Retail Clerks Union,
    398 U.S. 235 (1970) ...................................................................12

Brown. v. Pro Football, Inc.,
    50 F.3d 1041 (D.C. Cir. 1995) ........................................1, 3, 4, 6

Brown. v. Pro Football, Inc.,
    518 U.S. 231 (1996) ...........................................................*passim*

Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Local 174,
    203 F.3d 703 (9th Cir. 2000) ......................................................11

Camping Const. Co. v. Dist. Council of Iron Workers,
    915 F.2d 1333 (9th Cir. 1990) ....................................................12

Chi. Midtown Milk Dist.v. Dean Foods Co.,
    Nos. 18577, 18578, 1970 WL 2761 (7th Cir. July 9, 1970)........12

Dataphase Sys., Inc. v. C L Sys., Inc.,
    640 F.2d 109 (8th Cir. 1981) ........................................................3

Flood v. Kuhn,
    316 F. Supp. 271 (S.D.N.Y. 1970) .............................................11

Haywood v. NBA, 401 U.S. 1204, 205 (1971)...................................15

Int'l Ladies' Garment Workers' Union v. NLRB,
    366 U.S. 731 (1961) .....................................................................5

Int'l Bhd. of Elec. Workers,
    119 N.L.R.B. 1792 (1958)...........................................................14

Interstate Commerce Comm'n v. Chi., Rock Island & Pac. R.R. Co.,
    501 F.2d 908, 913 (8th Cir. 1974) ...............................................................................13

Jackson v. NFL,
    802 F. Supp. 226 (D. Minn. 1992) .......................................................*passim*

Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm Prods.,
    311 U.S. 91 (1940) ...............................................................................11

New Negro Alliance v. Sanitary Grocery Co.,
    303 US. 552 (1938) ...............................................................................11

NFLPA v. NFL,
    598 F. Supp. 2d 971 (D. Minn. 2008) ...............................................................................15

NLRB v. Nat'l Car Rental Sys.,
    672 F.2d 1182 (3d Cir. 1982) ...............................................................................6

Phelps-Roper v. Nixon,
    545 F.3d 685, 690 (8th Cir. 2008) ...............................................................................3

Pittsburgh Steelers, Inc.,
    1991 WL 144468 (N.L.R.B.G.C. June 26, 1991)...............................................................................5, 6

Plumbers & Steamfitters v. Morris,
    511 F. Supp. 1298 (E.D. Wash. 1981) ...............................................................................12

Powell v. NFL,
    930 F.2d 1293 (8th Cir. 1989) ...............................................................................4

Powell/McNeil v. NFL,
    764 F. Supp. 1351 (D. Minn 1991) .......................................................*passim*

Retail Assocs., Inc.,
    20 N.L.R.B. 388 (1958)...............................................................................14

Robertson v. NBA,
    389 F. Supp. 867 (S.D.N.Y. 1975) ...............................................................................11

Silverman v. MLB Player Relations Comm., Inc.,
    67 F.3d 1054 (2d Cir. 1995) ...............................................................................16

Silverman v. MLB Player Relations Comm., Inc.,
    880 F. Supp. 246 (S.D.N.Y. 1995) ...............................................................................16

iii

White v. NFL,
    No. 4-92-906, 2011 WL 706319 (D. Minn. 2011).............................................7, 10, 16

White v. NFL,
    41 F.3d 402 (8th Cir. 1994)...................................................................................*passim*

White v. NFL,
    585 F.3d 1129 (8th Cir. 2009).......................................................................................7

White v. NFL,
    822 F. Supp. 1389 (D. Minn. 1993) ........................................................................7, 10

White v. NFL,
    836 F. Supp. 1458 (D. Minn. 1994) ........................................................................9, 13

White v. NFL,
    972 F. Supp. 1230 (D. Minn. 1997) .............................................................................9

Williams v. NBA,
    45 F.3d 684 (2d Cir. 1995) .......................................................................................1, 4

**STATUTES**

29 U.S.C. § 157...........................................................................................................1, 5, 6

**TREATISES**

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of
    Antitrust Principles and Their Applications ¶ 275b n.87 (2d ed. 2000) ........................4

## PRELIMINARY STATEMENT

Defendants do not contest that their "lockout" is a <u>per se</u> unlawful group boycott and price-fixing agreement in violation of antitrust law.  Instead, Defendants respond that their conduct should be immune from antitrust scrutiny based on the remarkable assertion that courts and the NLRB can force employees to unionize.  This, and every one of Defendants' other arguments, has previously been rejected by the courts.

Section 7 of the NLRA makes clear, as Judge Doty held in <u>McNeil</u>, that the right of workers <u>not</u> to unionize is absolute, and is not akin to turning off a light switch.  By disclaiming their union, the Players have given up the right to strike, to collectively bargain, to have union representation in grievances, to have union representation in benefits determinations, and to have union regulation of agents.  The Players sacrificed these labor law rights for one reason:  to gain the ability to assert antitrust claims against anticompetitive restrictions imposed by Defendants.  Every court presented with this issue – the Supreme Court in <u>Brown</u>, the Eighth Circuit in <u>White</u>, the Second Circuit in <u>Williams</u>, the D.C. Circuit in <u>Brown</u>, and, of course, this Court in <u>McNeil</u> and <u>Jackson</u> – has stated that if players decide to end their union, the non-statutory labor exemption also ends.  It is established law that a union can renounce collective bargaining to enable its workers to protect themselves from antitrust violations.  (Point I.A.)

Nor does the Norris-LaGuardia Act (the "Act") deprive this Court of the power to issue an injunction.  As this Court held in <u>Jackson</u>, after players end their

union, there is no labor law policy reason to permit antitrust violations directed at player markets to continue.  (Point I.B.)

Defendants ask this Court to ignore an admitted antitrust violation and wait for the NLRB to process a case that it has not even decided to initiate.  It is this Court – not the NLRB – that has <u>exclusive</u> jurisdiction to decide the applicability of the antitrust laws and the non-statutory labor exemption, and to enforce the <u>White</u> SSA through which Defendants waived any right to assert the non-statutory labor exemption based on the NFLPA's status.  (Point I.C.)

Plaintiffs' Motion seeks a preliminary injunction to stop the irreparable harm being inflicted today.  The balance of equities decidedly supports enjoining Defendants' uncontested antitrust violation, which denies all Players the ability to enjoy a free market for their services and to play the game they love.  Every court to consider this issue has found such harms to be irreparable.  And, Defendants' complaint about having to comply with antitrust law is not a cognizable "hardship."  (Point II.)

Over the past three decades, courts have consistently rejected the same arguments on which Defendants now rely.  There is no reason for this Court to reach any different conclusion here.

**ARGUMENT**

## I.   PLAINTIFFS HAVE OVERWHELMINGLY ESTABLISHED A "SERIOUS QUESTION" ON THE MERITS

A preliminary injunction is warranted where the equities favor the movant as long as there are "questions so serious and difficult as to call for more deliberative investigation." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (where "the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less").

### A.   Defendants' Illegal "Lockout" Is Not Protected By Any Labor Exemption

#### 1.   There Is No Labor Exemption in the Absence of a Union

As this Court held in McNeil, the non-statutory labor exemption does not apply absent a collective bargaining relationship, which ends upon renunciation. Powell/McNeil v. NFL, 764 F. Supp. 1351, 1359 (D. Minn. 1991) ("Because no 'ongoing collective bargaining relationship' exists, the court determines that non-statutory labor exemption has ended."). In this situation, there is no labor law policy to override the important policy behind the antitrust laws. Every court to confront this issue agrees.

The Supreme Court in Brown expressly cited with approval the D.C. Circuit's "suggest[ion] that the exemption lasts until the collapse of the collective-bargaining relationship, as evidenced by decertification of the union." Brown v. Pro Football, Inc., 518 U.S. 231, 250 (1996); Brown v. Pro Football, Inc., 50 F.3d

1041, 1057 (D.C. Cir. 1995); see also Phillip E. Areeda & Herbert Hovenkamp,

Antitrust Law: An Analysis of Antitrust Principles and Their Applications ¶ 275b

n.87 (2d ed. 2000).  The same conclusion was reached in White v. NFL, 41 F.3d

402 (8th Cir. 1994) (affirming findings that labor exemption ended at

renunciation), and Williams v. NBA, 45 F.3d 684, 692 (2d Cir. 1995).  And,

Defendants themselves conceded in Powell v. NFL "that the Sherman Act could

be found applicable . . . if the affected employees ceased to be represented by a

certified union."  930 F.2d 1293, 1303 n.12 (8th Cir. 1989).

Taking out of context language from Brown, Defendants argue that the

renunciation here is not "sufficiently distant in time and in circumstances from the

collective-bargaining process" to end the labor exemption.  Opp'n, 3.  This

language, however, refers to a situation in which a union exists.  Even then, the

Brown court recognized that the labor exemption does not continue indefinitely.

Rather, the exemption ends at a point when "it would not significantly interfere

with the [collective bargaining] process," which occurs immediately when a union

no longer exists.  518 U.S. at 250.

### 2.    The Players' Disclaimer Ended the Union

Defendants argue that the NFLPA's disclaimer is a "sham."  On virtually

identical facts, this Court rejected that argument in McNeil.  Powell/McNeil, 764

F. Supp. at 1358.  The NFLPA disclaimed union representation and the majority of

Players voted to end the NFLPA's status as their bargaining representative, exactly

the same actions that were found sufficient in <u>McNeil</u>.  Reply Decl. of Richard

Berthelsen ¶¶ 23-26 ("Reply Decl.").

There are no "magic steps" that a union must follow to abandon collective

bargaining representation.  All that is required is a disclaimer of such status.

<u>Powell/McNeil</u>, 764 F. Supp. at 1358 ("Just as certification is not required to

create a collective bargaining relationship, a decertification proceeding is not

required to end it.").  In the different context of an effort to form a new union by

someone outside the NFLPA, the NLRB's General Counsel similarly concluded

that the NFLPA's disclaimer prior to <u>McNeil</u> had "effectively disclaimed its

representational rights and ha[d] converted itself from a Section 2(5) labor

organization to a trade association."  <u>Pittsburgh Steelers, Inc.</u>, 1991 WL 144468, at

*4 (N.L.R.B.G.C. June 26, 1991); <u>see also</u> <u>Powell/McNeil</u>, 764 F. Supp. at 1358

n.7 ("decertification proceeding makes no sense" where union no longer has

support of majority of employees).

Moreover, employers cannot <u>force</u> employees to remain a union.  Section 7

of the NLRA unequivocally provides that "[e]mployees shall have the right to self-

organization, . . . to bargain collectively through representatives of their own

choosing, . . . <u>and shall also have the right to refrain from any or all of such</u>

<u>activities</u> . . . ." 29 U.S.C. § 157 (emphasis added); <u>see also</u> <u>Int'l Ladies' Garment</u>

<u>Workers' Union v. NLRB</u>, 366 U.S. 731, 737 (1961) ("[t]here could be no clearer

abridgment of § 7 of the Act, assuring employees the right 'to bargain collectively

through representatives of their own choosing' or 'to refrain from' such activity"

than an employer who has granted exclusive bargaining status to an agency that was not selected by a majority of the employees"); NLRB v. Nat'l Car Rental Sys., 672 F.2d 1182, 1190 (3d Cir. 1982) ("[e]mployees not only have the right to bargain collectively, but also to refrain from collective bargaining").

The McNeil court thus rejected Defendants' "sham" argument because "just as employees have a right to bargain collectively through a labor organization, they also have a corresponding right not to do so."  Powell/McNeil, 764 F. Supp. at 1354, 1358 (citing 29 U.S.C. § 157).

Nor is there any merit to Defendants' claim that renouncing the NFLPA's union status was a meaningless change equivalent to "flicking a switch."  By de-unionizing, the Players gave up their labor law rights, including striking, collectively bargaining, regulating agents, and having union representation in grievances and benefit determinations.  Id. at 1358-59 (players "paid a price for the loss of their collective bargaining representative"); Brown, 50 F.3d at 1057 (discussing benefits to unionized employees under NLRA).  In exchange, the Players obtained antitrust rights to protect themselves from Defendants' anticompetitive conduct.

The intent behind the NFLPA's disclaimer of its status as a collective bargaining representative is legally irrelevant, as is speculation about what the Players might decide in the future.  An organization either is or is not a union. Powell/McNeil, 764 F. Supp. at 1356-57 (Defendants' "sham" defense "finds no support in labor law"); Pittsburgh Steelers, 1991 WL 144468, at *2 n.8 ("[T]he

fact that the disclaimer was motivated by 'litigation strategy,' i.e., to deprive the

NFL of a defense to players' antitrust suits and to free the players to engage in

individual bargaining for free agency, is irrelevant so long as the disclaimer is

otherwise unequivocal and adhered to.").[1]

Defendants' claim that it was bad faith for the NFLPA to renounce its

union status is absurd.  It was at <u>Defendants'</u> insistence that the NFLPA

reconstituted as a union in connection with the <u>White</u> settlement.  <u>White v. NFL</u>,

585 F.3d 1129, 1137 (8th Cir. 2009) ("the applicability of the non-statutory labor

exemption . . . is presumably what led the NFL to insist on recertification and

resumption of collective bargaining as part of the settlement").  And a possible

future renunciation of the NFLPA's collective bargaining status was expressly

provided for in the <u>White</u> SSA.  Reply Decl. ¶ 14-18.  Moreover, the union

"switch" was "on" for nearly twenty years, with renunciation occurring only after

two years of fruitless collective bargaining.  As this Court recently held, the bad

faith has been by <u>Defendants</u>, who sought an "unconscionable advantage,"

"inconsistent with good faith," against the Players.  <u>White v. NFL</u>, No. 4-92-

906(DSD), 2011 WL 706319, at *8 (D. Minn. Mar. 1, 2011).

---

[1] Defendants' out of context citation to miscellaneous snippets from players and
NFLPA officials is legally irrelevant.  However, even if "intent" was relevant, the
cited quotations demonstrate nothing more than the NFLPA's "intent" to support
and act as an advisor in this litigation, as was held proper in <u>White v. NFL</u>, 822 F.
Supp. 1389, 1430-31 (D. Minn. 1993).

### 3.      Defendants Waived Their Purported "Sham" Defense

Defendants barely address the SSA provision ("Section 5(b)")[2] through

which they unequivocally <u>waived</u> their purported "sham" defense as a <u>quid</u> <u>pro</u>

<u>quo</u> for the NFLPA's reconstituting as a union in connection with settling <u>White</u>.

Defendants assert their waiver applies only "when the players' decision 'to

end the collective bargaining status of the NFLPA' is made 'at or any time [] after'

the 'express term' of the CBA."  Opp'n, 40.  This is what happened here.  A

majority of Players indicated they wished to end the NFLPA's union status as of

eight hours prior to expiration of the CBA – an unequivocal and continuous

disclaimer effective "at" <u>and</u> "after" the CBA's expiration.

Nevertheless, to eliminate any possible doubt, a majority of Players

reaffirmed their decision post-expiration.  Player directors for all 32 teams

contacted their teammates and then unanimously voted to reaffirm the

renunciation as authorized by more than a majority of Players on each team.

Reply Decl. ¶¶ 23-26.  A majority of Players have thus twice "indicate[d] they

wish to end the collective bargaining status of the NFLPA on or after expiration of

[the CBA]," unequivocally triggering the waiver in Section 5(b).  Mot., 7-8.

Defendants argue that Section 5(a) – which prevents Players from bringing

antitrust claims against Defendants for six months <u>if</u> the NFLPA remains a union

following expiration – was the "obvious <u>quid</u> <u>pro</u> <u>quo</u>" for the waiver in Section

5(b).  Opp'n, 40-41.  Yet, Defendants identify <u>no</u> SSA language to support this

---

[2] Exhibit A to the Declaration of Barbara Berens ("Berens Decl.").

assertion.  Nor could they.  Defendants' waiver was a trade-off for resumption of the collective bargaining relationship after <u>White</u> whereby a majority of Players could later renounce the NFLPA as their collective bargaining representative and Defendants would not argue it was ineffective.  Reply Decl., ¶ 17.

The plain SSA language indicates that Section 5(a)'s six-month waiting period does not limit Section 5(b)'s waiver, which, by its terms, applies from the moment of any majority renunciation – effective "at" the CBA's expiration or "any time thereafter."  There is <u>no</u> language to indicate that any waiting period applies to enforcing the waiver in Section 5(b).

Nor is Section 5(b) void as a matter of public policy.  Opp'n, 50. Defendants' "authorities" discuss the principle that unlawful <u>private</u> contractual provisions can be void.  That principle has no application to the SSA:  a class action settlement agreement in which the waiver provision was approved by this Court and the Eighth Circuit.

Finally, Defendants incorrectly argue that their waiver "has no application" to their NLRB charge, which they claim "has to be resolved first."  Defendants' NLRB charge "assert[s] that the [NFLPA]'s purported disclaimer is invalid." Opp'n, 9.  Accordingly, there must <u>first</u> be an adjudication of whether Defendants have waived such a claim under Section 5(b).  That decision lies within the exclusive jurisdiction of this Court.  <u>White v. NFL</u>, 836 F. Supp. 1458, 1511 (D. Minn. 1994); Berens Decl., Ex. B (<u>White</u> Final Consent Judgment).

**B.      This Court Has Rejected Defendants' Overbroad View of the Norris-LaGuardia Act**

In February, this Court said: "I must tell you my analysis of the Norris-LaGuardia Act is a little bit different than [Defendants']. I think the Court has more freedom to grant injunctions in a case like this than [Defendants] believe[]." Hearing Tr. at 97:11-15, White v. NFL, No. 4-92-906 (D. Minn. Mar. 1, 2011).

In Jackson, this Court held that, notwithstanding the Act, a court is empowered to enjoin antitrust violations directed at a player market where, as here, there is no competing labor law policy at issue because the collective bargaining relationship has ended. Jackson v. NFL, 802 F. Supp. 226, 232-33 (D. Minn. 1992).

And, in White, this Court and the Eighth Circuit approved a class for injunctive relief to remedy the anticompetitive player market restraints imposed by Defendants. White, 822 F. Supp. at 1411, aff'd, 41 F.3d 402 (8th Cir. 1994). It is thus established that the Act does not bar injunctive relief against Defendants' anticompetitive player market restraints when "the non-statutory labor exemption terminated after the players abandoned their union." Jackson, 802 F. Supp. at 233-34.

Regardless of whether Defendants' antitrust violations arise from a purported "labor dispute," the Act "does not preclude injunctive relief" where "such relief will not undermine any labor policy set forth in the Act," which was enacted to protect "the rights of employees to organize into unions and engage in

10

'concerted activities for the purpose of collective bargaining.'" Id.  Where "the players [have] sacrificed their union representation and the protection of the labor laws to pursue their antitrust remedies," denying injunctive relief would "actually subvert the labor policies set forth in the Act."  Id.

Defendants' reliance upon the 1940 decision in Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm Products, 311 U.S. 91 (1940), is thus "misplaced."  Jackson, 802 F. Supp. at 234.  Indeed, it would "be ironic if a statute that had been enacted to protect the rights of individual employees from improper actions by employers and the courts were turned against those employees and used to justify the continued application of a system found illegal under the Sherman Act."  Id. at 233-34; see also Robertson v. NBA, 389 F. Supp. 867, 880 (S.D.N.Y. 1975) (Act does not bar antitrust injunction in basketball player market); Flood v. Kuhn, 316 F. Supp. 271, 280 n.15 (S.D.N.Y. 1970) (same for baseball player market); Boise Cascade Int'l, Inc. v. N. Minn. Pulpwood Producers Ass'n, 294 F. Supp. 1015, 1024-25 (D. Minn. 1968) (Act does not protect group boycott).

The decisions in New Negro Alliance v. Sanitary Grocery Co., 303 US. 552 (1938) and Burlington Northern Santa Fe Railway Co. v. International Brotherhood of Teamsters Local 174, 203 F.3d 703 (9th Cir. 2000), are similarly inapposite.  Burlington involved a union, and New Negro Alliance merely held that the court could not enjoin lawful, peaceful picketing against a company that refused to hire African-Americans.  Neither case involved a situation in which a group of employers were violating antitrust laws in a market in which the

employees had renounced collective bargaining.  As this Court held in <u>Jackson</u>, no competing labor law policy embodied in the Act exists in such a situation.

Moreover, Section 4(a) of the Act only prohibits injunctions against persons "ceasing or refusing to perform any work or to remain in any relation of employment."  Here, the Players are requesting an injunction so that they <u>can</u> work.   Section 4(a) is inapplicable on its face to a lockout.  The <u>per curium</u> decision <u>Chicago Midtown Milk Dist. v. Dean Foods Co.</u>, Nos. 18577, 18578, 1970 WL 2761 (7th Cir. July 9, 1970), cited by Defendants, nowhere mentions Section 4(a).  Rather, it only addresses Section 1, <u>see</u> <u>id</u>. at *1, which is inapplicable for the reasons discussed in <u>Jackson</u>.[3]

Finally, there is no merit to Defendants' argument that <u>Jackson</u> is irrelevant because it "did not involve a strike or lockout."  Opp'n, 14, 16 (citing <u>Chicago Midtown Milk</u>, 1970 WL 2761 and <u>Plumbers & Steamfitters v. Morris</u>, 511 F. Supp. 1298 (E.D. Wash. 1981)).  Defendants' boycott is an uncontested antitrust violation – not a labor law "lockout" – because there is no collective bargaining

---

[3] Defendants contend the Act permits injunctive relief only where conduct in Section 4 is not implicated.  Opp'n, 16 n.4.  This is incorrect.  <u>See</u> <u>Camping Const. Co. v. Dist. Council of Iron Workers</u>, 915 F.2d 1333, 1343 (9th Cir. 1990) ("federal courts do have jurisdiction to issue injunctions in some labor disputes, even in some of the circumstances covered by section 4's outright ban."); <u>Boys Markets, Inc. v. Retail Clerks Union</u>, 398 U.S. 235, 250-54 (1970).  In any event, as mentioned above, Section 4(a) is <u>not</u> applicable to a lockout and injunctions are permitted under Section 1 where <u>Dataphase</u> is satisfied.  <u>Jackson</u>, 802 F. Supp. at 234-35.

relationship.  Defendants' cases involved situations where a collective bargaining

relationship persisted and have no application here, as explained in <u>Jackson</u>.

> **C.     This Antitrust Case Presents No Issues Within the Primary
> Jurisdiction of the NLRB**

Defendants' insistence that the NLRB has primary jurisdiction fails because

the NLRB has no power to decide the labor exemption to the antitrust laws, a

disclaimer of union status does not require any action by the NLRB, and the

NLRB cannot interpret the SSA waiver provisions, which are within this Court's

exclusive jurisdiction (Point I.A.3, <u>infra</u>).

This Court has rejected identical attempts to thwart its jurisdiction.  In

<u>White</u>, it dismissed the argument that it should defer to the NLRB's supposed

"primary jurisdiction," explaining that "even findings with respect to the

reconstitution and recognition of the NFLPA as the players' union are not within

the primary jurisdiction of the NLRB.  The non-statutory labor exemption is a

judicially created doctrine, and the definition of its scope and application must be

made by the federal courts, not the NLRB." <u>White</u>, 836 F. Supp. at 1501; <u>see also</u>

<u>Interstate Commerce Comm'n v. Chi., Rock Island & Pac. R.R. Co.</u>, 501 F.2d 908,

913 (8th Cir. 1974) ("legal questions are for the courts to determine").  And, in

<u>McNeil</u> – where Judge Doty did <u>not</u> wait for the NLRB as the NFL had requested

– "the court held that the non-statutory labor exemption had ended because the

NFLPA was no longer a union, thereby rejecting [Defendants'] argument that such

a determination could only be made by the NLRB."  White, 836 F. Supp. at 1501

(reviewing history that led to SSA).

There is thus no basis for this Court to delay its decision on preliminary

relief – while Plaintiffs suffer ongoing, irreparable harm – to await resolution of a

NLRB proceeding that may never be initiated, could take years to conclude, and

cannot resolve any of the legal issues within this Court's exclusive jurisdiction.

Reply Decl. ¶¶ 27-35.

Defendants fail to cite any case where, as here, a majority of employees

voted to end the status of their union and the union voluntarily disclaimed any

interest in being a bargaining representative.  In fact, only two of Defendants'

cases involve a union renunciation in any form.  International Brotherhood of

Electrical Workers, 119 N.L.R.B. 1792, 1799 (1958), has no relevance because it

involved a "union's 'bare statement' of disclaimer" to represent a subset of its

members, while the organization continued to act for such employees regarding

union issues such as striking and employer benefit contributions.  Retail

Associates, Inc., 20 N.L.R.B. 388 (1958) also has no bearing – it involved a

disclaimer of a three-store unit of employees, while the union still represented the

same employees on a single-store unit basis.  Id. at 391.

Finally, Defendants' citation to the NLRB reference in Brown is inapposite.

Brown identified the "collapse of the collective-bargaining relationship" as a clear

point at which the labor exemption ends (referencing the D.C. Circuit's

identification of decertification as such an endpoint).  Its reference to the views of

the NLRB possibly being relevant only applied to line-drawing when a union still exists, as it did in <u>Brown</u>.  518 U.S. at 250.

## II.   THE EQUITIES DECIDEDLY FAVOR ENJOINING THE PER SE UNLAWFUL "LOCKOUT"

### A.   Plaintiffs Are Suffering Irreparable Harm

No court has accepted Defendants' view that money can fully compensate professional athletes for "<u>any</u> possible harm."  To the contrary, every court to decide the issue has held that no amount of damages can wholly compensate players for lost competitive opportunities given their short and precarious careers. Mot., 15-16 citing, <u>e.g.</u>, <u>Jackson</u>, 802 F. Supp. at 231; <u>NFLPA v. NFL</u>, 598 F. Supp. 2d 971 (D. Minn. 2008); <u>Haywood v. NBA</u>, 401 U.S. 1204, 205 (1971); <u>Bowman v. NFL</u>, 402 F. Supp. 754, 756 (D. Minn. 1975) ("unemployed but qualified professional football players who are prevented from seeking and obtaining employment in their chosen field by the concerted action of defendants" suffered irreparable harm).

Players are suffering irreparable harm now, before games are lost.  The off-season is the time when Players compete to try to find a team, make a roster, establish themselves as starting players, demonstrate that they can overcome injuries, or otherwise prove themselves.  To do this, they need the opportunity to sign with the right team, begin off-season workouts, learn the team's system, and compete before training camp begins.  Absent immediate injunctive relief, it will

be impossible to turn back the clock or quantify in damages these lost opportunities.  Reply Decl., ¶¶ 36-43; Mot., 15-16.

Nor is there any merit to Defendants' argument that this harm is not irreparable because "the lockout applies equally to all."  Opp'n, 45.  If anything, the fact that all Players are harmed makes the need for preliminary relief even more compelling.  Silverman v. MLB Player Relations Comm., Inc., 67 F.3d 1054, 1062 (2d Cir. 1995) (enjoining system harming all baseball players).

### B.   Defendants Face No Cognizable Hardship

Defendants' asserted "hardship" is that, if their "lockout" is enjoined, their subsequent conduct "undoubtedly would be subject to additional antitrust claims." Opp'n, 45.  But, "Defendants have no justifiable interest in continuing to violate the Sherman Act by preserving an illegal status quo."  Jackson, 802 F. Supp. at 232-33.  Defendants are complaining because the Supreme Court in American Needle v. NFL, 130 S. Ct. 2201 (2010), rejected their claim for antitrust immunity. There is, however, no reason why Defendants cannot devise a lawful player system.  Any burden of "uncertainty" under the antitrust laws is one all businesses must bear, especially antitrust recidivists like Defendants.  White, 2011 WL 706319, at *9 n.6 ("The NFL rankles under the restriction to its enormous market power imposed by the White settlement after the jury in McNeil found that the NFL had abused its power in unlawful restraint of trade.  The facts underlying this proceeding illustrate another abuse of that market power.").

16

C.    **Public Interest**

"The public interest strongly favors the granting of plaintiffs' injunctive relief because such relief fosters the policies underlying the Sherman Act and does not undermine the policies of labor law."  <u>Jackson</u>, 802 F. Supp. at 232-33. Communities, stadium workers, and fans could then enjoy football without economic harm.

Dated:  March 28, 2011                    Respectfully Submitted,


                                          s/Barbara P. Berens
                                          Barbara P. Berens #209788
                                          Justi R. Miller #387330
                                          Berens & Miller, P.A.
                                          3720 IDS Center
                                          80 South Eighth Street
                                          Minneapolis, MN 55402
                                          (612) 349-6171
                                          (612) 349-6416 (fax)
                                          bberens@berensmiller.com
                                          jmiller@berensmiller.com


                                          Timothy R. Thornton #109630
                                          Briggs & Morgan, P.A.
                                          2200 IDS Center
                                          80 South Eighth Street
                                          Minneapolis, MN 55402
                                          (612) 977-8550
                                          (612) 977-8650 (fax)
                                          Pvolk@briggs.com

                                          James W. Quinn
                                          Bruce S. Meyer
                                          Weil, Gotshal & Manges LLP
                                          767 Fifth Avenue
                                          New York, NY 10153
                                          (212) 310-8000

and

Jeffrey L. Kessler
David G. Feher
David L. Greenspan
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 259-8000

***Attorneys for Plaintiffs***