IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TOM BRADY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) No. 0:11-cv-00639-SRN-JJG |
| | ) |
| v. | ) |
| | ) |
| NATIONAL FOOTBALL LEAGUE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' EXPEDITED MOTION FOR A STAY PENDING APPEAL**

On April 25, 2011, this Court granted plaintiffs' motion for a preliminary injunction and enjoined the lockout of the NFL players. (Dkt No. 99 (the "Order").) The NFL and the NFL clubs request a stay of the Court's Order pending a ruling on appeal—which will be pursued on an expedited basis—pursuant to Federal Rule of Civil Procedure 62(c). (The notice of appeal has already been filed. *See* Dkt No. 100.)

All of the factors favoring a stay are present in this case: The NFL has a reasonable prospect of success on the merits of its appeal, which presents substantial and novel legal questions; the NFL will suffer irreparable harm absent a stay; a stay for the limited period necessary to secure appellate review will not substantially injure plaintiffs; and a stay is in the public interest.

## LEGAL STANDARD

"While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c); *see also* Fed. R. App. P. 8 (party seeking a stay pending appeal should first make the request in the district court).

Courts look to the following four factors in determining whether to stay an injunction pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Jake's Ltd. v. City of Coates*, 169 F. Supp. 2d 1014, 1017 (D. Minn. 2001).

A district court considering a stay motion will seldom, if ever, believe that it is *likely* that the movant will prevail on appeal; the court ordinarily assumes that the appellate court will agree with its own ruling. But that does not mean that stays are or should be rarely granted. Instead, "district courts properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the

status quo should be maintained." *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004). *Accord, e.g.*, *Exxon Corp. v. Esso Worker's Union*, 963 F. Supp. 58, 60 (D. Mass. 1997); *Jock v. Sterling*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010). In such a case, the "likelihood of success" factor is satisfied "when the 'question presented … is not wholly without doubt.'" *Lakehead Pipe Line Co. v. Investment Advisors, Inc.,* 900 F. Supp. 234, 235 (D. Minn. 1995) (quoting *In re Worker's Compensation Refund*, 851 F. Supp. 1399, 1401 (D. Minn. 1994)) (alteration in original).

Moreover, while the equities balanced by the court are similar for purposes of a preliminary injunction and a stay pending appeal, there is an important difference of timing. In considering a preliminary injunction, the District Court analyzes irreparable injury and the equities over the period necessary to adjudicate the case to final judgment. In *staying* a preliminary injunction, by contrast, the question is whether to preserve the *status quo* for only the brief period needed for expedited appellate review. Here, disruption to the status quo (the lockout) for the short period needed for expedited appellate review (during the offseason) would cause irreparable harm to the League but not the players, who did not even seek a temporary restraining order. And a stay pending appeal would afford the Eighth Circuit the same opportunity to review the merits, without altering the status quo, that this Court was afforded in considering the preliminary injunction motion.

## ARGUMENT

For the reasons set forth in the Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Opp.") (Dkt No. 34), the NFL and its member clubs have a strong likelihood of success on the merits of their appeal.  But, even if the Court disagrees, there can be no reasonable dispute that the Court's Order enjoining the lockout involves substantial and novel legal questions related to the anti-injunction provisions of the Norris-LaGuardia Act (Opp. 9-16), the doctrine of primary jurisdiction (*id.* 17-27), and the outer boundaries of the nonstatutory labor exemption to the antitrust laws (*id.* 28-42).

On any and all of these issues, it is "not wholly without doubt" that the Eighth Circuit will reach a conclusion different from that of this Court about the propriety of the injunction. *In re Worker's Compensation Refund*, 851 F. Supp. at 1401.[1]  The reasonable possibility that the NFL will prevail on appeal weighs sharply in favor of granting a stay.

---

[1] The Eighth Circuit should review *de novo* the applicability of (i) the Norris-LaGuardia Act; (ii) the primary jurisdiction doctrine; and (iii) the applicability of the nonstatutory labor exemption. *See, e.g.*, *Heartland Academy Cmty. Church v. Waddle*, 335 F.3d 684, 689-90 (8th Cir. 2003) (legal conclusions underlying preliminary injunctions reviewed *de novo*); *Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Local*, 203 F.3d 703, 707 (9th Cir. 2000) ("The existence of a 'labor dispute' within the meaning of the Norris-LaGuardia Act is … a question of law that we review de novo."); *United States v. Rice*, 605 F.3d 473, 475 (8th Cir. 2010) ("We review the issue of primary jurisdiction de novo.").

The balance of the equities also favors a stay. The NFL will ask the Eighth Circuit to consider its appeal on an expedited basis, and Section 10 of the Norris-LaGuardia Act requires the Court of Appeals to consider the appeal "expeditiously." 29 U.S.C. § 110. It is likely that the Eighth Circuit would be able to hear the appeal no later than early June. Staying the Order pending expedited appellate consideration poses little risk of irreparable harm to the plaintiffs during the off-season, when there will be no competition on the football field.

But failing to stay the injunction—even for the brief period of time until it is taken up on appeal—would irreparably harm the NFL. The clubs would be forced to choose between the irreparable harm of unrestricted free agency or the irreparable harm of more treble-damages lawsuits, and the League would face those harms immediately, even if the preliminary injunction were in place only for a few days. Finally, granting the stay will serve the public interest by ensuring an opportunity for appellate review before there are fundamental and irreversible changes in the relationships between and among the parties.

> A. At the very least, this case presents substantial and novel legal questions that merit a stay.

This case raises several "substantial and novel legal questions" regarding both this Court's jurisdiction and the contours of the nonstatutory

labor exemption. Accordingly, the NFL need show only that the questions presented by its appeal are "not wholly without doubt." *In re Worker's Compensation Refund*, 851 F. Supp. at 1401. The NFL easily meets this threshold.

*First*, it is "not wholly without doubt" that, because of the Norris-LaGuardia Act, the Court lacked jurisdiction to issue the Order. No court had ever before entered an injunction barring a lockout (except for one court whose injunction was dissolved on appeal.) Consistent with the Act's plain language, a number of other courts have held that the Act bars antitrust injunctions against lockouts, and that its protections are not tied to the existence of a union. (*See* Opp. 9-16.).

The Court concluded that it was "not convinced" that the Norris-LaGuardia Act applies here because of the NFLPA's disclaimer. (Order 61.) It is "not wholly without doubt" that the Eighth Circuit will agree. The Court determined that there is no "temporal gloss" on the Act's definition of a "labor dispute," (Order 58), but the Act expressly applies not just to cases involving labor disputes, but to cases "growing out of" them, 29 U.S.C. § 104, providing an express temporal connection.

The Court also concluded that it was "not convinced that the Norris-LaGuardia Act applies, absent the present existence of a union, so as to prohibit or condition injunctions." (Order 61.) But the Supreme Court has

already held that the Act applies to a dispute between employees and employers in which no union at all was involved. *See New Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552, 561 (1938). And the plain language of the Act defines a labor dispute as one that includes a controversy over terms or conditions of employment that "involves persons who are engaged in the same industry, trade, craft or occupation" and is "between one or more employers … and one or more employees." 29 U.S.C. § 113(a). In addition, the fact that the Act expressly defines persons "participating or interested in a labor dispute" to include both employers and employees, *id.* § 113(b), indicates that the Court's skepticism about whether Section 4 of the Act can apply to lockouts may be misplaced.

*Second*, it is "not wholly without doubt" that the Court's Order intrudes upon the primary jurisdiction of the National Labor Relations Board, which is already conducting proceedings addressing threshold questions for this case regarding the validity of the Union's disclaimer of interest. (*See* Opp. 17-27.) The Court relied primarily on Judge Doty's decision in *McNeil (sub nom. Powell) v. NFL*, 764 F. Supp. 1351, 1358-59 (D. Minn. 1991). But Judge Doty recognized that his decision presented a "controlling question of law *on which there is substantial ground for difference of opinion*." *Id.* at 1360 (emphasis

added). That easily meets the "not wholly without doubt" standard for issuance of a stay.[2]

*Third*, it is "not wholly without doubt" that the challenged lockout is "sufficiently distant in time and in circumstances from the collective-bargaining process that a rule permitting antitrust intervention would not significantly interfere with that process." *Brown v. Pro Football, Inc.*, 518 U.S. 231, 250 (1996). (*See* Opp. 28-42.) What constitutes "sufficient[] distan[ce] in time and in circumstances" is an issue that the Supreme Court expressly reserved in *Brown*, *see id.*, and no court since has attempted to answer that question in circumstances such as those presented here—where a union has purported to disclaim representation—or in any other circumstances.

The Court indicated that it did not believe the views of the NLRB were relevant or essential after a union purports to decertify. (Order 44-45 & n.31.) But the Eighth Circuit may disagree, particularly in light of the Supreme Court's statement in *Brown* that, in the situation of a collapse of the

---

[2] The Court also relied on a Board Division of Advice memorandum in *Pittsburgh Steelers*. But such memoranda are not binding Board precedent; for example, the Court of Appeals for the District of Columbia Circuit has "reject[ed] out of hand [the] suggestion that [a Board decision] is unreasonable because it conflicts with a memorandum issued by the General Counsel's Division of Advice …." *Chelsea Indus., Inc. v. NLRB*, 285 F.3d 1073, 1077 (D.C. Cir. 2002).

collective-bargaining relationship as evidenced by the decertification of a union, the Court would desire "the detailed views of the Board, to whose specialized judgment Congress intended to leave many of the inevitable questions concerning multiemployer bargaining bound to arise in the future" on "whether or where" to draw the line permitting an antitrust claim. 531 U.S. at 250 (internal quotations omitted).

In short, by enjoining the lockout, this Court has, at the very least, created new law on at least three issues of substantial importance, all of which the Eighth Circuit will review *de novo*. If the Eighth Circuit were to disagree with this Court on any of these points, it would come to a different conclusion about the appropriate ruling on the preliminary injunction motion. *See Jake's Ltd.*, 169 F. Supp. 2d. at 1018 (granting a stay when "[t]he Court stands by its earlier decision, yet recognizes the possibility that the Eighth Circuit could disagree").

B.   <u>The NFL will suffer irreparable harm if a stay is not granted.</u>

Absent a stay, the NFL will suffer irreparable harm even during the relatively short period of time necessary for this case to be considered on appeal.

To begin, if the Eighth Circuit disagrees with the Court's conclusions, in the absence of a stay the Order would irreparably alter the balance of economic power in the bargaining process and irreparably harm the League

and the clubs by depriving the NFL of its labor law right to lock out. *See, e.g.*, *Brown*, 518 U.S. at 245 ("Labor law permits employers … to engage in considerable joint behavior, including joint lockouts … ."); *NLRB v. Ins. Agents' Int'l Union*, 361 U.S. 477, 497 (1960); *Inter-Collegiate Press v. NLRB*, 486 F.2d 837, 846 (8th Cir. 1973).

The same considerations that led to the passage of the Norris-LaGuardia Act—a concern about the power of the federal judiciary "destroying the momentum" of a work stoppage "before substantive legal rights were litigated"—are implicated by the enjoining of the lockout. (Order 50 (internal quotation and citation omitted).)

Unless this Court's Order is stayed, the League and its clubs will also suffer irreparable harm because it will not be possible to unscramble the eggs and restore the parties to the status quo ante (a) if the Eighth Circuit were to disagree that a preliminary injunction should have issued and/or (b) if the NLRB were to determine that the NFLPA has bargained in bad faith and contravened the National Labor Relations Act in purporting to disclaim a role in bargaining.

The NFL would also face irreparable harm whether it (a) gave in to the players' demands for unrestricted free agency (which would undermine the competitive balance essential to the appeal of the League's on-field product); (b) continued with the rules in effect last year (which the complaint

challenges as anti-competitive under the same theory underlying the players' challenge to the lockout); or (c) imposed an alternative set of rules for the players to challenge as unreasonable restraints of trade.

This Court has already recognized that unrestricted free agency would cause irreparable harm to the NFL. *See Powell v. NFL*, 690 F. Supp. 812 (D. Minn. 1988) (denying a preliminary injunction sought by the plaintiff-players that would have resulted in unrestricted free agency for veteran NFL players). Recognizing "that a significant percentage of the unsigned players would move to new teams," this Court concluded that "it is highly probable that an injunction creating unrestricted free agency would irreparably harm the owners and have a deleterious effect upon professional football generally." *Id.* at 816. The Court explained that:

> [T]he players' insistence upon complete, unrestricted freedom of movement from club to club "ignores the structured nature of any professional sport based on league competition. Precise and detailed rules must of necessity govern how the sport is played, the rules of the game, and the acquisition, number, and engagement of players. While some freedom of movement after playing out a contract is in order, complete freedom of movement would result in the best franchises acquiring most of the top players. Some leveling and balancing rules appear necessary to keep the various teams on a competitive basis, without which public interest in any sport quickly fades."

*Id.* (quoting *Reynolds v. NFL*, 584 F.2d 280, 287 (8th Cir. 1978)). The Court observed that "although the requested injunction would only be 'preliminary' pending final resolution of this matter, its effects may be felt for years since

many players who moved undoubtedly would sign long-term contracts with their new clubs." *Id.*

Given that the Order in this case may entail the start of a free-agent signing period in the NFL—a period in which any structure or set of rules, even an agreement among the member clubs on the number of games that should make up a season, is subject to antitrust challenge—the logic of *Powell* applies equally if not with more force here. *See Brown*, 518 U.S. at 248-249 ("[T]he clubs that make up a professional sports league are not completely independent economic competitors, as they depend upon a degree of cooperation for economic survival."). But the clubs' agreement to common terms and conditions of player employment would expose the NFL and the member clubs to antitrust challenge for doing the things necessary to present their collective product in a manner responsive to consumer demand.

Even if this Court considered that to be a reasonable burden over the course of this entire litigation, it would be unduly disruptive—and have excessively far-reaching consequences—to impose it before the brief period of weeks necessary for expedited appellate review.

C. <u>A stay pending appeal would not irreparably harm plaintiffs.</u>

The lack of any harm that was both immediate and irreparable is presumably what caused the plaintiffs not to seek a temporary restraining order. A stay pending an expedited appeal of the Order would afford the

Court of Appeals the same opportunity that this Court enjoyed because of the absence of a request for a TRO—the ability to consider the merits of the preliminary injunction question without an irreparable alteration of the status quo ante.

It is the NFL offseason. (Ruocco Decl. ¶10.) Training camps and games do not begin for several more months, so no player stands to lose the opportunity to compete. (*Id.*) Thus, staying the Order pending expedited appeal will not cause the plaintiffs to lose playing time or any material irreparable harm during the short interval at issue.

As to the harm to players in the delay in the ability to sign contracts, a short delay pending expedited appeal pales in comparison to the irreparable harm to the NFL's labor law rights that the Order would create in the event that the Eighth Circuit disagrees with the Court's legal analysis. And plaintiffs have their claims for treble damages, which are more than adequate to make them whole for any injury incurred during the expedited appellate proceedings. *See, e.g.*, *Rittmiller v. Blex Oil, Inc.*, 624 F.2d 857, 861 (8th Cir. 1980); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.").

D.  <u>The public interest favors granting a stay.</u>

The Court has indicated its belief that the labor laws no longer apply to the terms and conditions of employment in the NFL. The Eighth Circuit and/or the Board may disagree. For purposes of this Motion, the strong public interest in encouraging collective bargaining and the collective bargaining process favor granting a stay pending expedited appellate review.[3]

## CONCLUSION

For the foregoing reasons, the Court should stay its Order pending appeal.

---

[3] If the Order is not stayed, the NFL reserves the right to seek an order requiring plaintiffs to post a bond. "The court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see* 11A Charles A. Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 2954 (2d ed. & supp. 2010) ("[T]he rule is phrased in mandatory terms and the conclusion seems inescapable that once the court decides to grant equitable relief under Rule 65 it must require security from the applicant."). The complexity of valuing the required bond is yet another reason warranting a stay pending expedited appellate review.

Respectfully submitted,

| | s/Daniel J. Connolly |
|---|---|
| David Boies (*pro hac vice*) | Daniel J. Connolly #197247 |
| BOIES, SCHILLER & FLEXNER LLP | Aaron D. Van Oort #315539 |
| 333 Main Street | FAEGRE & BENSON LLP |
| Armonk, NY  10504 | 2200 Wells Fargo Center |
| (914) 749-8200 | 90 South Seventh Street |
| (914) 749-8300 (fax) | Minneapolis, MN  55402-3901 |
| | (612) 766-7806 |
| | (612) 766-1600 (fax) |
| | |
| William A. Isaacson (*pro hac vice*) | Gregg H. Levy (*pro hac vice*) |
| BOIES, SCHILLER & FLEXNER LLP | Benjamin C. Block (*pro hac vice*) |
| 5301 Wisconsin Ave., NW | COVINGTON & BURLING LLP |
| Washington, DC  20015 | 1201 Pennsylvania Ave., NW |
| (202) 237-2727 | Washington, DC  20004-2401 |
| (202) 237-6131 (fax) | (202) 662-6000 |
| | (202) 662-6291 (fax) |

*Counsel for the NFL and NFL Clubs*

April 25, 2011