IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --
                                              :
Tom Brady, Drew Brees, Vincent Jackson, Ben   :   No. 11-cv-00639-SRN-JJG
Leber, Logan Mankins, Peyton Manning, Von     :
Miller, Brian Robison, Osi Umenyiora, and     :
Mike Vrabel, individually, and on behalf of all  :   ***BRADY* PLAINTIFFS'**
others similarly situated,                    :   **MEMORANDUM OF LAW**
                        Plaintiffs,           :   **IN OPPOSITION TO**
                                              :   **DEFENDANTS' MOTION FOR**
        vs.                                   :   **A STAY PENDING APPEAL**
                                              :
NATIONAL FOOTBALL LEAGUE, et al.,             :
                                              :
                        Defendants.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## INTRODUCTION

The Court should deny the NFL Defendants' motion for a stay of preliminary

injunction pending appeal.  In granting the *Brady* Plaintiffs' motion for preliminary

injunction, the Court properly found that the *Brady* Plaintiffs have a fair chance of

succeeding on the merits of their claim that the NFL Defendants' lockout violates the

antitrust laws, that their misconduct is not protected by the non-statutory labor

exemption, and that this Court can properly enjoin their misconduct.  The Court also

concluded that the *Brady* Plaintiffs would be irreparably harmed if the preliminary

injunction did not issue, and that the balance of harms favors the *Brady* Plaintiffs.

As set forth more fully below, the Court's Order is consistent with the decisions of

every other court that has ruled on the issues presented by the *Brady* Plaintiffs' motion

for a preliminary injunction.[1]  Yet the NFL Defendants argue that a stay should issue because the Court's grant of a preliminary injunction has forced them into a dilemma: either risk violating the antitrust laws (by imposing last year's system or some other system that players may challenge) or suffer the alleged injuries arising from "unrestricted free agency."[2]

That, however, is not the case.  If the NFL Defendants are faced with a dilemma, they put themselves in that position by repeatedly imposing rules and restrictions that violate the antitrust laws.  The NFL Defendants brought this situation to a head by choosing to terminate early both the Collective Bargaining Agreement and the Stipulation and Settlement Agreement in the *White* case.  Any alleged predicament is of their own making.

Moreover, the presumption underlying their argument is flawed.  There is no dilemma because the NFL Defendants have a viable third choice:  implement a new player system that does not violate the antitrust laws.  There is no reason why the NFL Defendants cannot devise a lawful player system, and their complaints about potential antitrust scrutiny are not well-founded where such scrutiny is a reality of doing business.

Granting the NFL Defendants' motion for a stay will not only exacerbate the players' ongoing, irreparable harm, but it will also harm the NFL Defendants.  The Court's preliminary injunction restoring the status quo should thus remain in force pending appeal, and the Court should deny the NFL Defendants' motion for a stay of that

---

[1] *See, e.g., infra* at p.15 & fn.5.
[2] *See* Defs.' Mem. in Supp. of Expedited Mot. for Stay at 10-11 ("Defs.' Mem.").

injunction pending appeal.

In the event, however, that the Court were inclined to grant the NFL Defendants' motion for stay, the *Brady* Plaintiffs ask the Court to require the NFL Defendants to post a bond in the amount of $1 billion, which represents roughly 25% of the amount that the players were compensated last year and is an appropriate amount given the uncertainty of the timing or outcome of the Eighth Circuit's ruling on the NFL Defendants' appeal, the ongoing irreparable harm to the players, and the amount of treble damages that the NFL Defendants may be liable for at the conclusion of this litigation.

## BACKGROUND

### A.      Procedural Background.

On April 6, 2011, the Court conducted a lengthy hearing on the *Brady* and *Eller* Plaintiffs' motions for injunctive relief.  On April 25, 2011, the Court entered its Order granting the *Brady* Plaintiffs' motion for a preliminary injunction.  *Brady v. NFL*, Civ. No. 11-639 (SRN/JJG) (D. Minn. Apr. 25, 2011) (hereinafter "Order").

On April 25, 2011, the NFL Defendants filed a notice of appeal to the Eighth Circuit, appealing certain portions of the Court's Order.  The NFL Defendants also moved this Court, pursuant to Fed. R. Civ. P. 62(c), for a stay of the preliminary injunction pending appeal.  The *Brady* Plaintiffs oppose the NFL Defendants' motion for a stay for the reasons set forth herein.

B.      **Factual Background.**[3]

The NFL Defendants locked out the players effective March 12, 2011.  *See* Order

at 15.  In granting the *Brady* Plaintiffs' motion for preliminary injunction, the Court

properly found that the *Brady* Plaintiffs are being irreparably harmed by the lockout and

that the balance of harms favors the players.  *Id.* at 68-81.  The Court also found that the

*Brady* Plaintiffs demonstrated a fair chance of success on the merits of their claims

regarding the NFL Defendants' lockout.  *Id.* at 81-87.  The Court further concluded that

the public interest does not favor the lockout.  *Id.* at 87-88.  Those same findings of fact

support a denial of the NFL Defendants' motion for a stay.

The NFL players are "in fact suffering [irreparable] harm now" as a result of the

lockout.  *Id.* at 71.  As the Court recognized, the players are suffering irreparable harm

because their skills will diminish as a result of the time spent away from the playing and

practice fields:  "[s]ignificantly, in previous battles in this long-running dispute between

the Players and the League, this Court has recognized that the threat of harm shown by

Plaintiffs here, including lost playing time, constitutes irreparable harm."  *See id.* at 17;

*see also id*. at 75.  The Court further found that "there is no dispute that, based on the

typically short duration of their professional careers and the constant risk of injury, [the

---

[3] The Court is familiar with the parties and their positions regarding the preliminary
injunction.  The *Brady* Plaintiffs therefore incorporate by reference the facts and
arguments set forth in their memoranda in support of their Motion for Injunctive Relief.
In addition, the *Brady* Plaintiffs rely upon the facts set forth in the Declaration of Richard
A. Berthelsen in Opposition to Defendants' Motion for a Stay dated April 26, 2011
("Berthelsen Decl.") and also the facts set forth in the Supplemental Declaration of
Richard A. Berthelsen in Support of the *Brady* Plaintiffs' Motion for Preliminary
Injunction dated March 28, 2011 ("Berthelsen Supp. Decl.") (Docket No. 42); *see also*
Docket Nos. 5-13, 43 (additional supporting declarations).

players] have shown it likely that they will suffer irreparable harm if injunctive relief is not granted." *Id.*

The NFL Defendants have already delayed the beginning of free agency for over a month, and they now seek a stay to further delay NFL players from having the opportunity to sign contracts or otherwise engage in a competitive market for their services. *Id.* at 75-78. Every day that the lockout remains in effect exacerbates the players' irreparable harm. *See, e.g.,* Order at 43, 74-79. Now is the time when free agency should be taking place, and players should be marketing their services to find the right team in which they have the best chance to make a roster, be a starter, or otherwise advance their careers. Berthelsen Supp. Decl. ¶ 40. This process requires an extended period of time to play out in a fair manner for all players, and any elimination or compression of this free agency period will lead to a set of scrambled outcomes and harms to different players that cannot be undone. *Id.*

Another source of the players' irreparable harm is the lockout's continuing impact on whether players will, or will not, make a particular team or be able to sign with the team that gives them the best chance to play. Such decisions are impacted on a continuing basis with workouts, classroom study, medical rehabilitation, on-field team practices, and other interaction with the NFL teams. *Id.* ¶ 41.

Despite their stated position in this litigation, the NFL Defendants have nonetheless taken numerous steps to prepare for the resumption of league operations, and the players should not be prevented from working for even one day longer. Berthelsen Decl. ¶ 12.

5

In addition, a stay allowing the "lockout" to continue would cause severe harm to fans, communities, and a myriad of businesses that rely on the NFL for their viability. Berthelsen Decl. ¶ 13; *see* Order at 87-88 (discussing why the public interest does not favor the "'lockout'").  Indeed, the NFL Commissioner has acknowledged that the longer the uncertainty around the 2011 season continues unresolved the worse it is for *everybody*:  **"**That's why we think that the longer it goes, it's bad for players, the clubs, our partners, and the fans."  *See* Berthelsen Decl. Ex. F (*Exclusive:  Roger Goodell criticizes NFL players' legal strategy*, USA Today, Apr. 22, 2011).

The NFL Defendants will thus not be harmed if the Court denies their motion for stay, thereby giving immediate effect to the preliminary injunction.  *See* Berthelsen Decl. ¶ 2.  This is the only way to preserve the 2011 season announced by the NFL, given the need to sign free agents, to complete the NFL draft and sign drafted players, to plan and to hold training camp, and to plan for the season itself.  *See id.*  Denying a stay will enable the NFL Defendants to go back to operating their multi-billion dollar business and making enormous amounts of money, as they did previously.  Berthelsen Decl. ¶ 3.

Conversely, a stay of the preliminary injunction, and the resulting continuation of the lockout, would actually harm the NFL Defendants, as the league has stated publicly that it will *lose* money during the lockout, and the loss would be in excess of $1 billion before even a single regular season game is cancelled.  *See* Berthelsen Decl. ¶ 3 & Ex. B (*NFL:  Staggering Financial Losses would Follow Lockout*, USA Today, Jan. 28, 2011).

Even if the motion for stay is denied and the lockout remains lifted, but the Eighth Circuit ultimately reverses this Court's decision, the NFL Defendants will not be harmed.

Rather, they would presumably reinstitute the lockout, and some players who were previously locked-out free agents or unsigned rookies would possibly then be locked-out players with contracts.  Berthelsen Decl. ¶ 3.  This would simply move these players from one subclass in this litigation to another.  *See* Compl. ¶ 25 (defining "Under-Contract Subclass," "Free Agent Subclass," and "Rookie Subclass").

There is also no evidence that lifting the lockout, even temporarily, would have a purported adverse effect on "competitive balance," because allegedly a small number of teams would be able to sign all of the top free agents.  Berthelsen Decl. ¶ 4.  The NFL historical evidence is to the contrary:  the two most recent seasons that were played without a salary cap in place (i.e., where a limited number of teams could theoretically dominate the free agent market) suggest just the opposite.  *Id.*  In the 2010 season, i.e., the last season covered by the expired Collective Bargaining Agreement ("CBA") and the *White* Stipulation and Settlement Agreement ("SSA"), the league operated without a salary cap and there was no resulting harm to competitive balance.  *Id.*  Indeed, the teams in the Super Bowl were the Green Bay Packers and the Pittsburgh Steelers, two small market teams.  *Id.*

There was also no salary cap in 1993, the first year that the *White* SSA and CBA took effect, again without any discernable harm to competitive balance.  *Id.*  For example, in that year, Hall of Fame defensive end Reggie White, at that time the most high profile free agent in NFL history, chose to sign with the small market Green Bay Packers.  *Id.*

Nor would the NFL Defendants' implementation of a new system be overly complex.  Berthelsen Decl. ¶ 5.  All that is required is for the NFL to inform its teams of

the rules it intends to implement, just as it has done in the past. *Id.* The NFL has a history of smoothly adopting new player systems, including the implementation of "Plan B" in 1989, the *White* uncapped system in 2003, the imposition of a cap in 2004, the changes to the system in 2006, and the removal of the cap and new free agency rules in 2010. *Id.*

Indeed, it appears that the NFL Defendants have already decided what player system they intend to implement now that the lockout is lifted, including at least some of the aspects of the system that was in place in 2010. Berthelsen Decl. ¶ 5. On March 3, 2011, before the scheduled end of the 2010 league year, all 32 NFL Clubs sent contract tenders for the 2011 season to free agent players, treating those players as if the NFL intends to keep in place the 2010 rules relating to so-called Restricted Free Agents, Franchise Players, and Transition Players. Berthelsen Decl. ¶ 6. The NFL Defendants did so by following the free agent rules which were in effect during the last year of the CBA and the *White* SSA. *Id.*

Under the 2010 system, players who were not under contract and had less than six accrued seasons in the league were considered to be "restricted free agents" and were subject to certain rules that limited those players' ability to sign with clubs other than their immediately preceding club. *Id.* Thus, before March 3 of this year, the NFL Clubs sent Restricted Free Agent Tenders to players with expiring contracts who had less than six accrued seasons. *Id.*

Under the 2010 system, each club also had the right to designate one player with an expiring contract as a so-called "Franchise Player" and one player as a so-called

"Transition Player."  *Id.*  Before March 3 of this year, those designations were again made by various clubs; for example, the Philadelphia Eagles designated Michael Vick as a Franchise Player and David Akers as a Transition player.  *Id.*  In addition, three of the named *Brady* Plaintiffs, Peyton Manning, Vincent Jackson and Logan Mankins, have already been designated as Franchise Players by their respective teams.  *Id.*

By making the Restricted Free Agent tenders and the Franchise Player and Transition Player tenders, the 32 NFL Clubs appeared to be acting as if they have already been told by the NFL that the league intends to continue, at least in part, the 2010 player system if the lockout were to be lifted.  Berthelsen Decl. ¶ 7.

In addition, talent evaluators and coaches for all 32 NFL Clubs have no doubt spent considerable time evaluating their rosters since the end of the 2010 season, and decided which free agents they would be interested in pursuing once the 2011 League Year begins and the free agent signing period opens.  *Id.*  Indeed, they have had even more time to do so in 2011 as compared to prior years because of the lockout.  *Id.*  It will thus be easy for the 32 NFL Clubs to immediately proceed with the free agent signing period and other business if the lockout ends.  *Id.*

The NFL Clubs and the league have taken other significant steps to prepare for the upcoming season.   Berthelsen Decl. ¶ 8.  For example, the NFL announced the complete pre-season schedule for 2011 on April 13 of this year, and the regular season schedule was released one week later.  *See* Berthelsen Decl. Exs. C, D & E (articles from NFL website).

The league is also conducting the annual college draft beginning on April 28, 2011

and running through April 30, 2011.  Berthelsen Decl. ¶ 8.  Approximately 254 college

players will be selected in that draft by the 32 NFL clubs, and the draftees will eventually

be signed to NFL player contracts.  *Id.*  Although the clubs have historically been allowed

to begin negotiations with a drafted player immediately after the draft, most of the

signings of drafted players occur in July of each year, shortly before pre-season training

camps typically begin.  *Id.*  This would likely be the case in 2011 as well, giving the

clubs several months in which to sign their drafted players.  *Id.*

 The league has also announced that it expects to play a full season in 2011.  *See*

Berthelsen Decl. Ex. F (*Exclusive:  Roger Goodell criticizes NFL players' legal strategy*,

USA Today, Apr. 22, 2011).  In order to accomplish this, unsigned players must be given

the opportunity to sign with teams and teams must hold training camps.  *Id.* ¶ 9.  In order

for the NFL to meet its just announced schedule (under which the first pre-season game

will be played on August 7, 2011 and the first regular season game on September 8,

2011), it is necessary to permit the signing of free agent and rookie players very soon.  *Id.*

 The timing for the Eighth Circuit's consideration of and ruling on the NFL

Defendants' appeal is unknown.  Free agency cannot be delayed while waiting for that

ruling.  Berthelsen Decl. ¶ 9.  Given the steps that need to be taken for the season to

begin, the risk that the 2011 season will be adversely affected is much greater if the

lockout continues even for a short period of time than if the lockout remains enjoined.  *Id.*

 In addition, any purported harm claimed by the NFL Defendants is entirely self-

inflicted.   Berthelsen Decl. ¶ 11.  The 32 Club owners *chose* on their own to terminate

the CBA early and lockout the players, and the NFL Defendants cannot possibly claim

any surprise at the NFLPA's abandonment of bargaining rights and the present lawsuit.

*Id.* They have known for months, if not years, that implementing a lockout could put

them in the very situation in which they now find themselves. *Id.* Indeed, the fact that

the NFL players might choose to withdraw the NFLPA's authorization to collectively

bargain at the end of the most recent agreements was expressly contemplated in those

agreements. *Id.*

The foregoing demonstrates that the Court should deny the NFL Defendants'

motion for a stay of the preliminary injunction pending appeal.

## ARGUMENT

### I.   <u>Standard.</u>

The NFL Defendants bear the burden of establishing the propriety of a stay of the

Court's preliminary injunction pending appeal. *See, e.g., Reserve Mining Co. v. U.S.*,

498 F.2d 1073, 1076 (8th Cir. 1974). To succeed on their motion for a stay pending

appeal, the NFL Defendants must show that: (1) they "make a strong showing" that they

are likely to succeed on the merits; (2) they will be irreparably injured absent a stay; (3)

the issuance of the stay will not substantially harm the *Brady* Plaintiffs and other

interested parties; and (4) the stay will not harm the public interest. *See, e.g., Hilton v.*

*Braunskill*, 481 U.S. 770, 776 (1987) (setting forth standard); *Rife v. Ashcroft*, 374 F.3d

606, 615 n.3 (8th Cir. 2004) (same standard in the Eighth Circuit).

Contrary to settled law in this Circuit, the NFL Defendants contend that the

standard for meeting their burden to show likelihood of success on the merits "is satisfied

'when the question presented . . . is not wholly without doubt.'" *See* Defs.' Mem. at 3

(quoting *Lakehead Pipe Line Co. v. Inv. Advisors, Inc.*, 900 F. Supp. 234, 235 (D. Minn.

1995) (Erickson, M.J.), in turn *quoting In re Workers' Compensation Refund*, 851 F.

Supp. 1399, 1401 (D. Minn. 1994)).

The language on which the NFL Defendants rely is set forth in *In re Workers'*

*Compensation Refund,* a district court case by Judge Rosenbaum.  The Eighth Circuit has

never cited *In re Workers' Compensation Refund* or otherwise relied on the "wholly

without doubt" language as the standard for demonstrating likelihood of success on the

merits.  Nor has any other appellate court adopted the "wholly without doubt" notion in

this context.  Indeed, the only case that refers to the "wholly without doubt" language at

all, *Lakehead Pipe Line Co.,* is one in which Magistrate Judge Erickson *denied* the

motion for a stay pending appeal.  *Lakehead Pipe Line Co.*, 900 F. Supp. at 235.

Moreover, the NFL Defendants mischaracterize Judge Rosenbaum's opinion.

Here is the entire passage from *In re Workers' Comp. Refund*:

> The Court, perhaps not surprisingly, believes the February 11, 1994 Order
> to be a proper declaration of the parties' constitutional rights.  A district
> court, however, may properly stay its order pending appeal where such
> order involves the determination of "substantial and novel legal questions."
> *Sweeney v. Bond*, 519 F. Supp. 124, 133 (E.D. Mo. 1981). *See also Walker
> v. Lockhart*, 678 F.2d 68, 71 (quoting *Dataphase Systems, Inc. v. C L
> Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981)) (where a movant "has
> raised a substantial question and the equities are otherwise strongly in his
> favor, the showing of success on the merits can be less").  The Court
> recognizes that the question presented in this matter is not wholly without
> doubt.  Therefore, the Court finds that this factor narrowly supports a stay.

*In re Workers' Comp. Refund*, 851 at 1401 (citation omitted); *see also id.* at 1403

(ultimately granting a stay even though only "one of the factors support[ed] a stay" while

"three of the factors oppose[d]" it).  Judge Rosenbaum's comment in a particularly

unique case hardly qualifies as setting a new standard for establishing a likelihood of

success, and it is particularly inappropriate here, where all of the equities are stacked

against the NFL Defendants.  There is no basis for this Court to depart from the well-

established standard set forth by the Supreme Court and the Eighth Circuit that the NFL

Defendants must make a "strong showing" of success on the merits.

## II.   The NFL Defendants Are Unable to Meet Their Burden to Justify a Stay.

For the reasons set forth herein, the NFL Defendants fail to meet their burden in

support of their motion for a stay.

### A.   The NFL Defendants Are Unable to Demonstrate Any Likelihood of Success on the Merits on Appeal.

In its Order of April 25, 2011, the Court concluded that the *Brady* Plaintiffs have

demonstrated a fair chance of success on the merits of their claim that the NFL

Defendants' lockout violates the antitrust laws and that the non-statutory labor exemption

does not protect this lockout.  *See* Order at 81-87.  In order to justify a stay, the NFL

Defendants must make a "strong showing that [they are] likely to succeed on the merits."

*Nken v. Holder*, ___U.S. ___, 129 S. Ct. 1749, 1761 (2009); *accord Hilton*, 481 U.S. at

776; *see supra* (discussing the factor).

Here, the NFL Defendants cannot make the requisite "strong showing."  The Court

has already found that the NFL Defendants do not contest that the lockout is a "*per se*

unlawful group boycott and price-fixing agreement in violation of antitrust law."  *See*

Order at 83.  The Court also rejected the NFL Defendants' argument that the NLRB has

exclusive statutory jurisdiction over the question of whether the players' disclaimer is valid when the Court found that it need not defer to the NLRB. *Id.* at 19-32.

The Court further found that the non-statutory labor exemption ended when the Players' Association disclaimed any further role in collective bargaining for the players and a majority of the players indicated that they no longer wished to be represented in collective bargaining. *Id.* at 45. In so ruling, the Court emphasized that the NFL Defendants offered *no legal support* for the proposition that the non-statutory labor exemption extends to the realm of non-labor employment disputes after a union ceases to exist as the employees' collective bargaining agent. *Id.* at 58. The Court characterized the NFL Defendants' attempt to extend indefinitely the non-statutory labor exemption to cover their lockout in this manner as being "fraught with peril." *Id.*

Finally, the Court rejected the NFL's argument that the Norris-LaGuardia Act prohibits an injunction here in favor of the players, finding the NFL Defendants had failed (yet again) to provide the court with any "controlling or even persuasive authority" that the Norris-LaGuardia Act continues to apply "in the post-collective bargaining, post-union world of employment law." *Id.* at 66.

In light of these rulings, and the NFL Defendants' failure to provide any legal basis for their position, the NFL Defendants fail to make a strong showing (or any showing at all) that they are likely to succeed on the merits. This factor, which the Eighth Circuit considers the "most significant," *S&M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992), weighs heavily against granting a stay pending appeal. *See, e.g., Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511 (9th Cir. 1984).

**B.** **The NFL Defendants Fail to Show that They Will Be Irreparably Injured Absent a Stay.**

The Court has already found that the "*Brady* Plaintiffs have shown not only that they likely would suffer irreparable harm absent preliminary injunction, but that they are in fact suffering such harm now." [4]  *See* Order at 71 (emphasis added); *see also id.* at 71-79 (setting forth in detail the factual bases for that finding).

The Court's finding of irreparable harm is also consistent with the findings of other courts faced with the same issue.  *See, e.g., Silverman v. MLB Player Relations Comm., Inc.*, 67 F.3d 1054, 1062 (2d Cir. 1995) ("Given the short careers of professional athletes and the deterioration of physical abilities through aging, the irreparable harm requirement has been met."); *Jackson v. NFL*, 802 F. Supp. 226, 231 (D. Minn. 1992) ("The existence of irreparable injury is underscored by the undisputed brevity and precariousness of the players' careers in professional sports, particularly in the NFL."); *NFLPA v. NFL*, 598 F. Supp. 2d 971, 982 (D. Minn. 2008) ("The failure to make the playoffs . . . is not compensable monetarily and is therefore an irreparable harm."). [5]  The

---

[4] This finding of the players' irreparable harm directly contradicts the NFL Defendants' argument that players are suffering no harm because "[i]t is the NFL offseason." Defs.' Mem. at 13 (citation omitted); *compare* Berthelsen Supp. Decl. ¶¶ 37-38 (stating that over the past twenty years, the NFL has increasingly become a year-round business, with players participating at many important club activities during the so-called "off-season").

[5] *Accord Robertson v. NBA*, No. 70 Civ. 1526, 1970 WL 532, at *1 (S.D.N.Y. Apr. 17, 1970); *Denver Rockets v. All-Pro Mgmt., Inc.,* 325 F. Supp. 1049, 1057 (C.D. Cal. 1971), *injunction reinstated sub nom., Haywood v. NBA*, 401 U.S. 1204 (1971); *Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 423 (9th Cir. 1991); *McCourt v. Cal. Sports, Inc.*, 460 F. Supp. 904, 912 (E.D. Mich. 1978), *vacated on other grounds*, 600 F.2d 1193 (6th Cir. 1979); *Linseman v. World Hockey Ass'n*, 439 F. Supp. 1315, 1319-20 (D. Conn. 1977); *Bowman v. NFL*, 402 F. Supp. 754, 756 (D. Minn. 1975).

granting of a stay of the preliminary injunction will further exacerbate the players'
irreparable harm.

The NFL Defendants, on the other hand, will not be harmed if the Court denies
their motion for a stay.  The NFL Defendants have no justifiable interest in maintaining a
lockout that violates the antitrust laws in the absence of the non-statutory labor
exemption.  *See* Order at 80 (ruling that "the League cannot predicate harm on the results
of its illegal conduct"); *accord Jackson,* 802 F. Supp. at 232 ("[D]efendants have no
justifiable interest in continuing to violate the Sherman Act by preserving an illegal status
quo."); *Capitol Records, Inc. v. Thomas-Rasset*, 680 F. Supp. 2d 1045, 1060 (D. Minn.
2010) (same).

Indeed, the NFL Defendants will likely *benefit* from the immediate imposition of
the preliminary injunction.  *See* Berthelsen Decl. ¶¶ 2-3.  Denying the stay will preserve
the 2011 season already announced by the NFL, given the need to sign free agents, to
complete the NFL draft and sign drafted players, to plan and to hold training camp, and to
plan for the season itself.  *See id.* ¶ 2.  It will also enable the NFL Defendants to go back
to operating their multi-billion dollar business and making enormous amounts of money,
as they did previously.  *See id.* ¶ 3.

Nor will the NFL Defendants be harmed by going forward with the 2011 season
where the facts demonstrate that the NFL Defendants have taken numerous steps to
proceed with the season.  *See* Berthelsen Decl. ¶¶ 8, 12.  For example, the NFL
announced the complete pre-season schedule for 2011 on April 13 of this year, and
released the regular season schedule one week later.  *See* Berthelsen Decl. ¶ 8 & Exs. C,

16

D & E (articles from NFL website).  The league is also conducting the annual college

draft beginning on April 28, 2011 and running through April 30, 2011.  Berthelsen Decl.

¶ 8.  In addition, the league has announced publicly that it expects to play a full season in

2011.  *See* Berthelsen Decl. Ex. F (*Exclusive:  Roger Goodell criticizes NFL players'*

*legal strategy*, USA Today, Apr. 22, 2011).

　　　Nor would the NFL Defendants' implementation of a new system in the absence

of a stay be overly complex.  Berthelsen Decl. ¶ 5.  All the NFL would have to do is to

inform its teams of the rules it intends to implement for 2011, just as it has done in the

past (for example, by implementing "Plan B" in 1989, the *White* uncapped system in

2003, the imposition of a cap in 2004, the changes to the system in 2006, and the removal

of the cap and new free agency rules in 2010).  *Id.*

　　　Here, the Court has found that the players are already suffering irreparable harm as

a result of the lockout, *see* Order at 71-79, and that the self-inflicted and speculative

"harm" alleged by the NFL Defendants is outweighed by the players' ongoing,

irreparable harm.  *See id.* at 80-81.  The Court should thus deny the NFL Defendants'

motion for a stay of the preliminary injunction because the NFL Defendants fail to

demonstrate irreparable harm in the absence of a stay.  *See, e.g., Republic of Phil. v.*

*Westinghouse Elec. Corp.,* 949 F.2d 653, 663 (3d Cir. 1991).

## C.　　The Grant of a Stay Is Not in the Public's Interest.

　　　The Court found that the public interest factor does not favor the "lockout" when

granting the *Brady* Plaintiffs' motion for preliminary injunction.  *See* Order at 87-88.

Granting a stay of that preliminary injunction would reinstitute a lockout that is violative

of the antitrust laws and does not serve any countervailing labor policy where the non-statutory labor exemption no longer applies.  *Id.*  Reinstating the lockout would not serve the public interest.  Moreover, as this Court found, "the public interest represented by the fans of professional football–who have a strong investment in the 2011 season–is an intangible interest that weighs against the lockout." *Id.* at 87.  Thus, the NFL Defendants fail to meet their burden of demonstrating that the public interest favors the grant of their motion to stay.

### D.   The Court's Granting of the Preliminary Injunction Did Not Involve "Substantial and Novel Legal Questions."

In support of their motion for a stay, the NFL Defendants also argue that "there can be no reasonable dispute" that the preliminary injunction involves "substantial and novel questions of law" in three areas:  (1) "the anti-injunction provisions of the Norris-LaGuardia Act;" (2) "the doctrine of primary jurisdiction;" and (3) "the outer boundaries of the nonstatutory labor exemption."  Defs.' Mem. at 4.  The Court should also reject this argument.

The Court's ruling about the inapplicability of the Norris-LaGuardia Act does not represent a substantial and novel determination of law.  It instead reflects a long line of cases that hold that the Act represents a policy against enjoining *labor unions*,[6] a situation that the Court correctly found was no longer present.

---

[6] *See, e.g., Burlington N. R.R. v. Bhd. of Maint. of Way Employees*, 481 U.S. 429, 437 (1987) (stating "[t]he Norris-LaGuardia Act . . .  expresses a basic policy against the injunction of activities of labor unions") (citation omitted); *Burlington N. Santa Fe R. Co. v. Int'l Bhd. of Teamsters Local 174*, 203 F.3d. 703, 708 (9th Cir. 2000) (noting that Congress broadly defined labor dispute under the Norris-LaGuardia Act to cover primary

The Court's ruling that it is not required to refer this matter to the NLRB under the doctrine of "primary jurisdiction" also fails to present a substantial and novel question of law. *See, e.g., Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 626 (1975) (concluding that "the federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies, including the antitrust laws"); *Augsburger v. Bhd. of Locomotive Eng'rs*, 510 F.2d 853, 858 nn.5&7 (8th Cir. 1975) (concluding that the *Garmon* doctrine "is properly classified as one of preemption, rather than primary jurisdiction"); *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (explaining that "[n]o fixed formula exists for applying the doctrine of primary jurisdiction"); *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938-39 (8th Cir. 2005) (reversing district court dismissal on basis of FDA's primary jurisdiction where case was not a "rare case requiring expert consideration and uniformity of resolution" and cautioning that primary jurisdiction doctrine "is to be invoked sparingly, as it often results in added expense and delay") (quotations omitted).[7]

The Court's ruling that the *Brady* Plaintiffs are likely to succeed on the merits of their claim that the non-statutory exemption does not apply here also presents no

---

and secondary activities of *unions*); *Mackey v. NFL*, 543 F.2d 606, 622-23 (8th Cir. 1976); *NFLPA*, 598 F. Supp. at 978; *White v. NFL*, ___ F. Supp. 2d ___, 2011 WL 706319, at *11 (D. Minn. Mar. 1, 2011).

[7] The NFL Defendants incorrectly assert that the Eighth Circuit will review this Court's ruling on primary jurisdiction "*de novo*." *See* Defs.' Mem. at 4 n.1. As this Court persuasively explained, however, that ruling is properly subject to review for abuse of discretion. *See* Order at 32-33 n.22.

substantial and novel question of law.[8]  *See Brown v. Pro Football, Inc.*, 518 U.S. 231,

250 (1996) (noting that the non-statutory exemption must end at some point); *Stearns v.

NCR Corp.*, 297 F.3d 706, 710 (8th Cir. 2002) ("In general, an employment contract

between an employer and a non-union employee is governed by state law, not by ERISA

or by the federal labor laws"); *Corrugated Asbestos Contractors, Inc. v. NLRB*, 458 F.2d

683, 687 (5th Cir. 1972) (denying employer's petition for review of NLRB order and

noting that the court "cannot force a union to continue, against its wishes, a relationship

that is in its very nature predicated upon voluntariness and consent").

Indeed, the fallacy of the NFL Defendants' position is demonstrated by the fact

that all of the foregoing issues have been raised by the NFL Defendants and decided

previously by this Court, and in a manner consistent with the Court's decision to grant the

*Brady* Plaintiffs' motion for a preliminary injunction.  The legal questions thus are far

from "novel."  *See, e.g., Powell/McNeil v. NFL*, 764 F. Supp. 1351, 1357-59 (D. Minn.

1991) (rejecting the NFL's arguments that the Court must defer to the jurisdiction of

NLRB and holding that the non-statutory labor exemption ended when the players

renounced the NFLPA's status as their collective bargaining representative); *Jackson*,

802 F. Supp. at 234 (finding that the Norris LaGuardia Act did not bar injunctive relief

where "the non-statutory labor exemption terminated after the players abandoned their

---

[8] Indeed, when rejecting the NFL Defendants' arguments regarding the non-statutory labor exemption, the Court emphasized that the NFL Defendants offered *no legal support* for the proposition that the non-statutory labor exemption extends to the realm of non-labor employment disputes after a union ceases to exist as the employees' collective bargaining agent.  *See* Order at 58.

union"); *see also* Berthelsen Decl. ¶ 10.  The Court should reject the NFL Defendants'

argument about the alleged "novelty" of its rulings.

Even if the Court were to characterize its ruling as one involving "substantial and

novel legal questions," such showing is insufficient to warrant a stay.  The NFL

Defendants are still required to make a strong showing of likelihood of success on the

merits.  *See, e.g., U.S. v. City of Saint Paul,* 193 F.R.D. 640, 641 (D. Minn. 2000) (even if

a ruling involves substantial and novel legal questions, the movant for stay must still

show likelihood of success on the merits) (Davis, J.).  For the reasons set forth above,

they are unable to meet this burden.

**III.    The Court Should Order the NFL Defendants to Post a Bond in the Amount of $1 Billion in the Event the Stay Is Granted.**

A stay of the grant of a preliminary injunction may be conditioned upon the filing

of a supersedeas bond in the district court.  *See, e.g.*, Fed. R. Civ. P. 62(c).  In the event

that the Court were inclined to grant the NFL Defendants' motion for a stay, the *Brady*

Plaintiffs request that the Court order the NFL Defendants to post a bond in the amount

of $1 billion to protect the players' rights, which sum represents just a quarter of the

players' 2010 salaries.  *See* Berthelsen Decl. ¶ 14.  Even at this amount, the bond would

be significantly less than the treble damages that the NFL Defendants could be liable for

at the end of this antitrust suit.  *Id.*

Contrary to the NFL Defendants' claim that the Eighth Circuit may hear their

appeal by early June, *see* Defs.' Mem. at 5, both the length and outcome of the appeal is

unknown.  Even if the Eighth Circuit were to order a somewhat expedited schedule, the

appellate process will take time, during which the players will continue to suffer significant harm.  Accordingly, the issuance of a bond in the amount of $1 billion for the stay is appropriate.  *See, e.g., State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical Therapy, Inc.*, Civil Action No. 03-5595, 2009 WL 2096274, at *5 (E.D. Pa. July 14, 2009) (ordering surety bond in connection with stay of preliminary injunction); *see also In re Garcia*, 436 B.R. 825, 830 (W.D. Va. Bankr. 2010) (conditioning stay on appeal on debtor's filing of supersedeas bond).

## CONCLUSION

Based on the foregoing, the *Brady* Plaintiffs respectfully request that this Court deny the NFL Defendants' motion for a stay of this Court's Order granting the *Brady* Plaintiffs' motion for a preliminary injunction.   If, however, the Court were inclined to grant the stay, the *Brady* Plaintiffs ask the Court to require the NFL Defendants to post a bond pending appeal in the amount of $1 billion.


Dated:  April 27, 2011                    Respectfully Submitted,


                                          s/Barbara P. Berens
                                          Barbara P. Berens, #209788
                                          Justi Rae Miller, #387330
                                          Berens & Miller, P.A.
                                          3720 IDS Center
                                          80 South Eighth Street
                                          Minneapolis, MN 55402
                                          (612) 349-6171
                                          (612) 349-6416 (fax)
                                          bberens@berensmiller.com
                                          jmiller@berensmiller.com

Timothy R. Thornton #109630
Briggs & Morgan, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 977-8550
(612) 977-8650 (fax)
Pvolk@briggs.com

James W. Quinn
Bruce S. Meyer
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

and

Jeffrey L. Kessler
David G. Feher
David L. Greenspan
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 259-8000

**_Attorneys for the Brady Plaintiffs_**