# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Tom Brady, Drew Brees, Vincent Jackson, Ben Leber, Logan Mankins, Peyton Manning, Von Miller, Brian Robison, Osi Umenyiora, Mike Vrabel, Carl Eller, Priest Holmes, Obafemi Ayanbadejo, Ryan Collins, and Antawan Walker, | Civil No. 11-639 (SRN/JJG) |

*individually and on behalf of all
others similarly situated*,

        Plaintiffs,

    v.

National Football League, et al.,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**

---

Barbara P. Berens and Justi R. Miller, Berens & Miller, PA, 80 South Eighth St., Suite 3720, Minneapolis, MN 55402; Timothy R. Thornton, Briggs & Morgan, PA, 80 South Eighth St., Suite 2200, Minneapolis, MN 55402; Bruce S. Meyer and James W. Quinn, Weil, Gotshal & Manges, LLP, 767 Fifth Ave., New York, NY 10019; Christopher R. Clark, David G. Feher, David L. Greenspan, Jeffrey L. Kessler, Jennifer Stewart and Molly Donovan, Dewey & LeBoeuf, LLP, 1301 Avenue of the Americas, New York, NY 10019, for Plaintiffs Brady, Brees, Jackson, Leber, Mankins, Manning, Miller, Robison, Umenyiora and Vrabel.

Arthur N. Bailey, Jr., Hilary K. Scherrer, Jon T. King, Michael D. Hausfeld and Michael P. Lehmann, Hausfeld LLP, 44 Montgomery St., Suite 3400, San Francisco, CA 94104; Daniel S. Mason, Mark J. Feinberg and Michael E. Jacobs, Zelle Hofmann Voelbel & Mason LLP, 500 Washington Ave. South, Suite 4000, Minneapolis, MN 55415; and Samuel D. Heins and Vincent J. Esades, Heins Mills & Olson PLC, 310 Clifton Ave., Minneapolis, MN 55403, for Plaintiffs Eller, Holmes, Ayanbadejo, Collins and Walker.

Daniel J. Connolly and Aaron D. Van Oort, Faegre & Benson, LLP, 90 South Seventh St., Suite 2200, Minneapolis, MN 55402; Benjamin C. Block, Gregg H. Levy and James M. Garland, Covington & Burling, LLP, 1201 Pennsylvania Ave. Northwest, Washington DC 20004; David Boies and William A. Isaacson, Boies, Schiller & Flexner, LLP, 333 Main St., Armonk, NY 10504, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before this Court on Defendants' Expedited Motion to Stay Pending Appeal [Doc. No. 101]. For the reasons discussed below, this Court denies Defendants' motion.

## I.   BACKGROUND

Defendants, the National Football League and its member teams ("the NFL" or "the League"), seek a stay pending their appeal of this Court's April 25, 2011 Order (Doc. No. 99 (the "Order")). In that Order, this Court granted Plaintiffs' Motion for a Preliminary Injunction and enjoined the pending "lockout." In their notice of appeal, the NFL describes the issues as follows:

"(1) Jurisdiction – The Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq.* withdraws jurisdiction from the federal courts to issue injunctions in cases involving or growing out of labor disputes. On March 12, 2011, the NFL clubs locked out their player-employees after the collective bargaining agreement expired and the players had walked out of a bargaining negotiation session. On April 25, 2011, the district court preliminary [sic] enjoined the work stoppage. Did the district court exceed its jurisdiction by issuing the injunction?

(2) Primary Jurisdiction – Plaintiffs predicate their antitrust claims on the ground that the National Football League Players Association ("NFLPA")'s purported disclaimer of interest in further representation of NFL players in collective bargaining as of 4:00 pm on March 11, 1011, instantly ended the applicability of the nonstatutory labor exemption. The validity of the disclaimer is a necessary, but not sufficient, predicate to plaintiffs' claims. Determining whether a union has validly disclaimed interest is an issue withing the exclusive jurisdiction of the National Labor Relations Board. The district court addressed the validity of the disclaimer in issuing the injunction. Did the district court err by failing to stay the motion for a preliminary injunction in deference to the primary jurisdiction of the NLRB, before which an unfair labor practice charge challenging the disclaimer is pending?

       (3) <u>Non-statutory Labor Exemption</u> – The nonstatutory labor exemption
prevents actions of multiemployer bargaining units (such as the NFL clubs)
from being subjected to antitrust scrutiny unless such actions are
"sufficiently distant in time and in circumstances" from the collective
bargaining process, a test that should not be deemed satisfied without the
"detailed views" of the NLRB. <u>Brown v. Pro-Football, Inc.</u>, 518 U.S. 231,
250 (1996). Did the district court err in finding that the lockout was
sufficiently distant in time and in circumstances from the collective
bargaining process, or in making that finding without any input from the
NLRB?"

(Doc. No. 100-1 (Notice of Appeal, Appellant's Form A).)[1]

      In seeking a stay of this Court;s Order, the NFL argues that all of the factors

favoring a stay are present. They argue that "[t]he NFL has a reasonable prospect of

success on the merits of its appeal, which presents substantial and novel legal questions;

the NFL will suffer irreparable harm absent a stay; a stay for the limited period necessary

to secure appellate review will not substantially injure plaintiffs; and a stay is in the

public interest." (Doc. No. 103 (Defs' Mem. Supp. Mot. for a Stay) at 1.) Plaintiffs

oppose that motion. (Doc. No. 110.)

## II.   DISCUSSION

      A court may "suspend, modify, restore, or grant an injunction on terms for bond or

other terms that secure the opposing party's rights" during the pendency of an appeal.

Fed. R. Civ. P. 62(c). In exercising its discretion whether to grant such a stay, this Court

considers the following relevant factors:

      "(1) whether the stay applicant has made a *strong showing* that he is likely
      to succeed on the merits; (2) whether the applicant will be irreparably

---

      [1]    This Court notes that the NFL indicated that its present enumeration of the
issues on appeal does *not* serve as its "statement of issues under FRAP 10(b)(3)." (<u>Id.</u>)

injured absent a stay; (3) whether issuance of the stay will substantially
injure the other parties interested in the proceeding; and (4) where the
public interest lies."

Nken v. Holder, ___ U.S. ___, 129 S. Ct. 1749, 1756 (2009) (quoting Hilton v.

Braunskill, 481 U.S. 770, 776 (1987) (emphasis added)).  The Eighth Circuit applies this

same standard.  Reserve Mining Co. v. United States, 498 F.2d 1073, 1076-77 (8th Cir.

1974)).  Because "traditional stay factors contemplate individualized judgments in each

case, the formula cannot be reduced to a set of rigid rules."  Hilton, 481 U.S. at 777.

    "A stay is an 'intrusion into the ordinary processes of administration and judicial

review,' and accordingly 'is not a matter of right, even if irreparable injury might

otherwise result to the appellant.'"  Nken, 129 S. Ct. at 1757 (internal citations omitted).

Because a stay is not a matter of right, but rather "'an exercise of judicial discretion,'" the

applicant "bears the burden of showing that the circumstances justify an exercise of that

discretion."  Id. at 1760–61.  "Because the burden of meeting this standard is a heavy one,

more commonly stay requests will not meet this standard and will be denied."  11 Charles

Alan Wright, Federal Practice and Procedure § 2904, at 503-05 (2d ed.1995).

    The NFL, however, contends that district courts should stay their own orders

"'when they have ruled on an admittedly difficult legal question and when the equities of

the case suggest that the status quo should be maintained.'"  (Doc. No. 103, at 2-3)

(quoting and citing federal district court cases from California, Massachusetts and New

York).  With respect to the merits factor, the NFL claims that "the likelihood of success'

factor is satisfied 'when the question presented . . . is not wholly without doubt.'"  (Doc.

4

No. 103, at 3.)[2]

The "not wholly without doubt" standard urged by the League cannot be reconciled with the Supreme Court's requirement of a "*strong showing* on the merits," and appears to be an effort by the League to convert the showing to the low hurdle of "*any possibility of success* on the merits" or a "more than merely negligible" chance of success. There are few issues in the law that one could characterize as so beyond any dispute as to be deemed "not wholly without doubt." Perhaps this is why the Supreme Court has ruled that "[i]t is not enough that the chance of success on the merits simply be 'better than negligible.'" Nken, 129 S. Ct 1761. "'[M]ore than a mere possibility' of relief is required.'" Id.

The NFL derives its proposed standard from several Minnesota district court cases that referred to it based upon the decision of the Eastern District of Missouri in Sweeney v. Bond, 519 F. Supp. 124, 132 (E.D. Mo. 1981). There, the court explained that several circuits–the District of Columbia, the Second and the Ninth Circuits–had adopted that standard. Id. To this Court's knowledge, however, the Supreme Court–the court whose authority controls this Court's decision–has not adopted the NFL's proposed standard as the general rule governing stays pending an appeal. Nor has the Eighth Circuit clearly

---

[2]     Several decisions from this district have applied this standard. In re Workers' Compensation Refund, 851 F. Supp. 1399, 1401 (D. Minn. 1994); see also Lakehead Pipe Line Co. v. Investment Advisors, Inc., 900 F. Supp. 234, 235 (D. Minn. 1995) (observing that the likelihood of success factor may be "narrowly satisfied" when the question presented "is not wholly without doubt.") (quoting In re Workers' Compensation Fund, 851 F. Supp. at 1401). But the Eighth Circuit clearly has never adopted such a standard.

overruled its decision in <u>Reserve Mining Co. v. United States</u>, 498 F.2d 1073, 1076-77
(8th Cir. 1974).  Nor has the District of Minnesota uniformly adopted the NFL's proposed
standard.  In <u>United States v. The City of St. Paul</u>, for example, now Chief Judge Davis
clarified that the applicant's proposed standard "that it need only show that its appeal
involves the determination of substantial and novel legal issues" is "not entirely correct."
193 F.R.D. 640, 641 (D. Minn. 2000).  Having cited the Supreme Court's decision in
<u>Hilton</u> that the relevant factors include "whether the stay application has made a strong
showing the he/she is likely to succeed on the merits," the district court observed that "the
movant must still make a showing of likelihood of success on the merits."  <u>Id.</u>

But this Court need not address this matter further because even under the lenient
standard that the NFL proposes, the League still is not entitled to a stay pending appeal.
Even if a lesser showing on the merits is permissible, the NFL would have to compensate
for that lower showing with a strong showing of irreparable harm to it pending the appeal
(and, more precisely, a strong showing of its harm compared to what a stay would inflict
on the Players).  <u>Walker v. Lockhart</u>, 678 F.2d 68, 71 (8th Cir. 1982) (relying on the
flexible, "sliding-scale" standard of <u>Dataphase</u> governing motions for  preliminary
injunctions).

The essence of any stay pending appeal is irreparable harm–and whether the
appellant (and stay applicant) would suffer *irreversible injury* if the decision at issue was
not stayed pending the outcome of the appeal.  <u>Cf.</u> <u>Winter v. Natural Res. Def. Council,</u>
<u>Inc.</u>, 555 U.S. 7, 129 S. Ct. 365, 375-76 (explaining that its "frequently reiterated standard
requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is

6

*likely* in the absence of an injunction" (emphasis in original)); <u>Planned Parenthood of Minnesota v. Rounds</u>, 530 F.3d 724, 732 n.5 (8th Cir. 2008) (*en banc)* ("'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'").

Here, the NFL has shown no such injury resulting from or in any way related to this Court's Order, which, importantly, *only* enjoins the lockout. The NFL argues that it will suffer irreversible injury and irreparable harm–not because the lockout has been lifted–but by the potential signing of contracts between owners and players in a free-agency market. (Doc. No. 103, at 11-12 (claiming that "the Order in this case may entail the start of a free-agent signing period in the NFL–a period in which any structure or set of rules, even an agreement among the member clubs on the number of games that should make up a season, is subject to antitrust challenge ").) That argument is based on the incorrect premise that this Court's Order somehow enjoined the restraints on player free agency alleged to violate the antitrust laws in the Brady Plaintiffs' Complaint.

### A.     Balancing The Equities:  The League's Claim of Irreparable Harm Absent a Stay Compared to the League's Assertion That The Players Would Suffer No Injury Under A Stay Pending Appeal

The NFL asserts that the "balance of the equities also favors a stay." (Doc. No. 103, at 5.) Again, the NFL argues it will suffer irreparable harm because it is now "forced to choose between the irreparable harm of unrestricted free agency or the irreparable harm of more treble damages lawsuits." (Id.) But no such Scylla-or-Charybdis choice exists here. There is no injunction in place preventing the NFL from exercising, under its hoped-for protection of the labor laws, any of its rights to negotiate

terms and conditions of employment, such as free agency.  This Court did *not* rule on

whether the Brady Plaintiffs had made a sufficient showing that they will prevail at trial,

much less that they already have prevailed, on whether the nonstatutory labor exemption

continues to preclude exposure to antitrust liability on the substantive terms of the

Players' employment.  The Eighth Circuit will not even be addressing, much less ruling

on, player restraints, free agency, etc., for the simple reason that this Court did not rule on

those issues.

Accordingly, the NFL is only in the position of any defendant who has been

accused of illegal action, but not (yet) found liable.  The League can *choose* either to

continue its *allegedly*-illegal behavior until judgment, or to modify its behavior.  But

nothing legally compels either choice between April 25th and any future Eighth Circuit

decision.[3]  In such an environment, the Players cannot force any onerous contract terms

on the NFL.  In fact, nothing in this Court's Order obligates the NFL to even enter into

any contract with the Players.  In short, the world of "chaos" the NFL claims it has been

thrust into–essentially the "free-market" system this nation otherwise willfully operates

---

[3]        The Court notes that the NFL states that it "will ask the Eighth Circuit to
consider its appeal on an expedited basis." (Doc. No. 103, at 5.)  And the League
repeatedly refers to pursuing their appeal "on an expedited basis" (id. at 1, 12, 13), yet a
review of the Eighth Circuit's docket for Tom Brady, et al. v. National Football League,
et al., No. 11-1898, shows that, as of the date of this Order, the NFL has not filed a
motion for expedited review.  Whether this appeal is taken on an expedited basis is
relevant to the period of time the proposed stay of the injunction might last–that is,
balancing the harms for the next six weeks or so, as opposed to a potentially much longer
period if the appeal is not expedited.

under–is not compelled by this Court's Order.[4]

### 1.   Injury To The NFL

The League then contends that any harm to the Players in delaying the ability to sign contracts "pales in comparison to the irreparable harm to the NFL's labor law rights that the Order would create in the event that the Eighth Circuit disagrees with the Court's legal analysis." (Doc. No. 103, at 13.)  First, the NFL contends that the "balance of economic power in the bargaining process" will harm the League by depriving them of their "labor law right to lock out." (Id. at 9-10.)  This contention assumes that both parties view the negotiations as being at impasse in the collective bargaining process.  But the Players do not believe there is a collective bargaining process in place.  And with or without a stay, that "balance of power" will not shift until the appeal is resolved.  Neither side can enjoy any balance of power in their favor until the fundamental question of whether a labor dispute exists is resolved, lockout or no lockout.  Moreover, the balance of economic power may be implicated by *any* legal decision and does not, therefore, constitute irreparable harm.

The League also argues that considerations leading to the passage of the Norris LaGuardia Act – concerns about the federal judiciary "'destroying the momentum' of a

---

[4]      The Court notes that the NFL's claim that the 2011 season cannot proceed without a new CBA is somewhat puzzling in light of the fact that the NFL chose to withdraw from the prior CBA two years before its scheduled expiration.  And the NFL cannot claim surprise.  The events since March 11 are a repeat of twenty years ago.  The NFL, having engaged in unsuccessful negotiations on a new CBA for almost two years, plainly anticipated the NFLPA's disclaimer because it was the subject of collective bargaining as long ago as 1993 when it was expressly anticipated in the White Settlement Agreement and CBA.

work stoppage 'before substantive legal rights were litigated' – are implicated by the enjoining of the lockout." (Doc. No. 103, at 10 (quoting Order at 50).)   The "work stoppage" in the present dispute was instigated by the League, and, to be fair, this Court's ruling, which is limited to enjoining the League's lockout, can scarcely be analogized to the pro-employer strike-breaking actions of the judiciary that led to the passage of the Norris-LaGuardia Act in 1932.

The NFL also argues that it faces irreparable harm absent a stay if it "g[i]ve[s] in to the players' demands for unrestricted free agency," continues with the rules in effect last year, or imposes an alternative set of rules for the players to challenge as unreasonable restraints of trade. (Id. at 10-11.) The League also maintains that, absent a stay, its clubs' possible agreements to common terms and conditions of player employment "would expose the NFL and the member clubs to antitrust challenge for doing the things necessary to present their collective product in a manner responsive to consumer demand." (Id. at 12.)

With respect to the NFL's alleged injuries, this Court finds the League's claim of irreparable harm, absent a stay, misplaced. The League may choose to act in accordance with its expressed belief that the Players remain a union and that they have reached a state of impasse, or the League may choose to chart a different course, implementing a version of the 2010 player system, or something different altogether. This Court's Order does not obligate the NFL to enter into contracts, nor does it proscribe the League's non-lockout conduct in general. Like any defendant in any lawsuit, Defendants themselves must make a decision about how to proceed and accept the consequences of their decision.

Moreover, as the Brady Plaintiffs point out, a stay of the injunction and a continuation of the lockout would inflict financial harm *upon the League*, which stands to lose approximately $1 billion before a single game is even cancelled.  (Doc. No. 111 (Decl. of Richard A. Berthelsen) ¶ 3, Ex. B.)  As to the notion that, without a lockout, the "competitive balance" of the NFL will be jeopardized, Plaintiffs counter that in 2010, the last season covered by the expired CBA and <u>White</u> Stipulation and Settlement Agreement ("SSA"), the League operated without a salary cap and there was no harm identified to competitive balance, as perhaps best exemplified by the fact that two small market teams, the Green Bay Packers and the Pittsburgh Steelers, played in the Super Bowl.  (<u>Id.</u> ¶ 4.)

Further, the League's own advanced planning belies the likelihood of any descent into chaos such as they now envision, absent the imposition of a stay.  On April 13, 2011 – during the lockout – the NFL announced the complete pre-season schedule for 2011, and released the regular season schedule one week later. (<u>Id.</u> ¶ 8, Exs. C, D & E.)   In an April 22, 2011 article appearing in USA Today, NFL Commissioner Roger Goodell informed the press that "we're planning to play a full 16-game regular season and playoffs." (<u>Id.</u> ¶ 9, Ex. F.)   In order to accomplish this, it appears that the NFL took certain steps, prior to the lockout and the lifting of the lockout, to implement some aspects of the system that was in place in 2010.  (<u>Id.</u> ¶¶ 5, 8, 12.)  On March 3, 2011, for example, the NFL clubs sent contract tenders for the 2011 season to free agent players, treating them as if the League intended to operate with the 2010 rules in place.  (<u>Id.</u> ¶ 6.)  The League is conducting its annual college draft from April 28-30, 2011.  (<u>Id.</u> ¶ 8.)  These are specific actions that the NFL has undertaken on its own.  They were not imposed by

this Court.  In laying some of the operational groundwork for the 2011 season,

Defendants' actions dispel their argument that absent a stay, they will suffer irreparable

harm because they are unprepared to resume business operations.

Moreover, as the Brady Plaintiffs contend, the implementation of any new system

of operation is not overly complex, as revealed by the past actions of the League.  The

NFL has previously adopted new player systems, including the implementation of "Plan

B" in 1989, the White uncapped system in 2003, the imposition of a cap in 2004, changes

to the system in 2006, and the removal of the cap and new free agency rules in 2010.  (Id.

¶ 5.)

For all of these reasons, the League has not met it burden of showing that if a stay

is not lifted, it will suffer irreparable harm because it is unprepared to resume business

operations and to conduct typical off-season activities.

### 2.    Injury To The Players and Others

The League also claims that "[s]taying the Order pending expedited appellate

consideration poses little risk of irreparable harm to the plaintiffs during the off-season,

when there will be no competition on the football field."  (Doc. No. 103, at 5.)  The NFL

even argues that it is obvious that even the Players themselves recognize that they are

incurring, or will incur, no irreparable harm, as the lack of such injury "is presumably

what caused the plaintiffs not to seek a temporary restraining order."  (Id.)  The League

overlooks the fact that the Brady Plaintiffs filed a motion for a preliminary injunction

simultaneously with the filing of their Complaint.  (Doc. Nos. 1, 2.)  And by choosing

that option over a request for a TRO, the Players afforded the NFL the opportunity to

respond and be heard at the hearing.

In terms of the NFL's substantive arguments, it contends that, because training camps and games do not begin for several more months, "no player stands to lose the opportunity to compete." (Id. at 13.)  Defendants also reiterate the argument advanced in opposition to the Brady Plaintiffs' motion for injunctive relief, namely, that monetary damages are more than adequate to compensate Plaintiffs for any injury incurred.  (Id.)

Any such argument fails to acknowledge this Court's ruling.  The lockout plainly raises issues of harm beyond those that are compensable by damages.  This Court addressed, at substantial length, the irreparable injuries that the Players are *presently* incurring, and have been incurring, since the League locked them out on March 12, 2011. This Court came to that conclusion based on the extensive affidavit evidence submitted by the Brady Plaintiffs.  The NFL offered little, if any, evidence to directly rebut the Players' affidavits, either in response to the motion for a preliminary injunction, or here. Moreover, the NFL's argument assumes the Eighth Circuit will rule before the season begins.  In the absence of a motion seeking an expedited appeal, that seems unlikely.

Accordingly, the balance of equities tilts indisputably in favor of the Brady Plaintiffs.  A stay would re-impose on the Players precisely the irreparable harm that this Court found the NFL's lockout to be likely inflicting on them since March 12.

## B.    Likelihood of Success on the Merits

As discussed above, the Supreme Court's clearly reiterated ruling that a stay applicant must make "'a *strong showing* that he is likely to succeed on the merits,'"  Nken v. Holder, ___ U.S. ___, 129 S. Ct. 1749, 1756 (2009) (quoting Hilton v. Braunskill, 481

U.S. 770, 776 (1987) (emphasis added), casts a substantial doubt on the applicability of the more lenient standard that the NFL advocates, namely, that this case raises several "substantial and novel legal questions" regarding jurisdiction and "the contours of the nonstatutory labor exemption," and that it is "not wholly without doubt" that the Eighth Circuit will disagree with this Court's Order (Doc. No. 103, at 6).  The NFL has not met its burden of proof.

The NFL's failure in this regard is premised in large part on its mis-understanding or mis-characterization of what this Court decided.  Or perhaps more accurately, what this Court did *not* decide.  This is evident in the NFL's framing of the purported issues on appeal, particularly its claim that this Court misapplied the Supreme Court's decision in Brown v. Pro-Football, Inc., 518 U.S. 231 (1996).  But the Eighth Circuit will *not* be addressing whether this court erred in finding that the lockout was sufficiently distant in time and in circumstances from the collective bargaining process, or in making that finding without any input from the NLRB, as was held in Brown, 518 U.S. at 250 (ruling that the nonstatutory labor exemption prevents actions of the NFL from being subjected to antitrust scrutiny unless such actions are "sufficiently distant in time and in circumstances" from the collective bargaining process, a test that should not be deemed satisfied without the "detailed views" of the NLRB).

The Eighth Circuit will not be addressing that issue because this Court did *not* decide that issue.  As this Court explained at length, in Brown the Supreme Court addressed the issue of a negotiating *impasse*, the situation where a *union* and the employer reach a pause, that usually proves temporary, during the collective bargaining

negotiations.  (Doc. No. 99, at 44-48.)  This Court carefully explained that no such

question was at issue here because the NFLPA disclaimed its status as the Players'

negotiating agent just prior to the expiration of the CBA and ceased all union functions on

behalf of the Players.  This Court thus decided the issue that was in fact before it–whether

the NFLPA's disclaimer was valid and effective, an issue that was neither novel nor

difficult in light of the NLRB's clear and consistent standard governing such disclaimers,

and to which the NLRB has adhered for decades.

The NFL also contends that this Court decided "substantial and novel legal

questions" related to "the outer boundaries of the nonstatutory labor exemption to the

antitrust laws."  (Doc. No. 103, at 4.)  This Court does not disagree that the exemption

issue is "substantial," but this Court did not reach the question of whether the exemption

protects mandatory terms of collective bargaining outside of the collective bargaining

framework.  Rather, the Court found that the lockout (1) is not a mandatory term, and

therefore not subject to the exemption; and (2) has no role outside of collective

bargaining.

The NFL has, in this Court's considered judgment, little chance of success on the

merits on this appeal on that issue because this Court did *not* decide that issue–namely,

whether the nonstatutory labor exemption continues to insulate the League, under the

factual circumstances in effect since March 11, 2011, with respect to negotiations or

agreements regarding the mandatory terms of collective bargaining, that is, the

substantive terms and conditions of employment.

Although the Brady Plaintiffs could have sought more expansive preliminary

injunctive relief beyond Count I, they did not.  This Court limited its ruling to the issue

before it–whether the Brady Plaintiff's were entitled to preliminary relief enjoining the

lockout.  Thus, the NFL's suggestion that the Eighth Circuit apply a *de novo* standard of

review to the issue of "the applicability of the nonstatutory labor exemption" (Doc. No.

103, at 4 n.1), is not so much wrong as it is presently irrelevant.  There is little point in

debating the appropriate standard of review of a "ruling" that did not occur, does not

exist, and, therefore, will not be reviewed on appeal.

     Specifically, the League argues that it is "not wholly without doubt" that this Court

lacked jurisdiction to enter the Order due to the Norris-LaGuardia Act, irrespective of the

existence of a union:  that is, whether the Norris-LaGuardia Act applies because the

present dispute "grows out of" a labor dispute, absent the present existence of a union,

and whether Section 4 of the Act can apply to lockouts.  (Id. at 6-7.)  The NFL boldly

claims that "the Supreme Court has already *held* that the Act applies to a dispute between

employees and employers in which no union at all was involved.  See New Negro

Alliance v. Sanitary Grocery Co., 303 U.S. 552, 61 (1938)."  (Id. at 7.)  The Supreme

Court's decision discloses no such holding.  Granted, the status of the employer's

employees was not discussed (whether they were organized as a union or not), but there is

nothing in New Negro Alliance on which the NFL could premise its assertion that the

Court "held" that Norris-LaGuardia Act applies even where no union exists or even

formerly existed.  Indeed, to this Court's knowledge, every case that cites New Negro

Alliance involves a union.  E.g., Burlington Northern Santa Fe R. Co. v. Int'l

Brotherhood of Teamsters Local 174, 203 F.3d 703, 709 n.6 (noting that cases applying

16

Supreme Court's "broad definition" of the term "labor dispute" nevertheless involve a union).

The NFL also contends that the Eighth Circuit may well disagree with this Court's conclusions regarding the validity of the NFLPA's disclaimer.  The NFL argues that it is "not wholly without doubt" that this Court's Order "intrudes upon the primary jurisdiction of the National Labor Relations Board."  (Id. at 7.)  But in light of the fact that the Board has consistently articulated a clear standard that is well within this Court's competence to apply, this Court exercised its discretion to apply the general rule rather than the exception and thereby not refer the issue to the Board and run the risk of substantial delay.  In fact, deciding the issue of the validity of the NFLPA's disclaimer was not difficult in light of the fact that the Board's General Counsel addressed essentially the identical issue twenty years ago.[5]

Having considered the NFL's arguments, the Court concludes that the League has failed to make the requisite "strong showing" of the likelihood of its appeal to succeed on

---

[5]     The NFL's argument that the General Counsel's opinion in Pittsburgh Steelers has no precedential value is not persuasive, because such opinions are based on the Board's decisions.  (Doc. No. 99, at 39 n.27.)  Moreover, the League's reliance on Chelsea Indus., Inc. v. NLRB, 285 F.3d 1073 (D.C. Cir. 2002), is misplaced.  In Chelsea Industries, the court only ruled that a decision of the Board may not be deemed unreasonable based on the fact that it conflicts with a General Counsel Advice Memorandum.  285 F.3d at 1077.  Here, the General Counsel's opinion at issue is entirely consistent with the decades of Board decisions that the General Counsel cited in support. Moreover, Chelsea Industries concerned the right of the Board to change its previously-settled position and articulate a "new policy."  Id. at 1074, 1076 ("The Board is at liberty to change its policies as long as it justifies the change with a 'reasoned explanation.'"). Here, no such change is at issue as the General Counsel applied long-standing precedent of the Board that remains the law to this day.  The League's current charge that the disclaimer was ineffective appears to be in the hands of the General Counsel.

the merits.  This Court's decision is firmly grounded in well-established precedent, despite the League's unfounded accusation that the Court "has, at the very least, created new law on at least three issues of substantial importance . . . ."  (Doc. No. 103, at 9.)

Any court considering this factor–the "likelihood of success on the merits"–on a motion to stay runs the risk of appearing presumptuous in its assessment of the strength of its analysis in its order.  However, given the weight and breadth of the controlling authorities that form the  basis of this Court's analysis, this Court finds that the League has not met its burden.  But this Court need not deny the stay on that basis alone, because the NFL also fails to demonstrate any irreparable harm that it would suffer absent a stay, particularly when weighed against the injury a stay would inflict upon the Players.

### C.      Where the Public Interest Lies

Finally, the NFL contends that the public interest in encouraging the collective bargaining process would be well-served by issuing a stay pending expedited appellate review.  However, there is no collective bargaining process to be served here, because the Players believe they have effectively disclaimed the Union as their collective bargaining agent and will not now engage in collective bargaining.  The League's public interest argument is unpersuasive.  The NFL voluntarily opted out of the then-applicable Collective Bargaining Agreement ("CBA") in May 2008, two years before its expiration. Since that time, during the parties' failed attempts to negotiate a new CBA, the NFL warned the Players that they might utilize a lockout as a means to achieve a favorable agreement.  White v. NFL, CV 4-92-906 (DSD), 2011 WL 707319, *1 (D. Minn. Mar. 1,

2011). The NFL has had ample opportunity to serve and promote the public interest in encouraging the collective bargaining process in the past, but in this present context, there is no such process to encourage. As this Court suggested in its Order, there is no public interest in permitting the NFL to continue to enjoy the benefits and protections of labor law–antitrust immunity and the right to lock out the Players–without the Players being able to enjoy their corresponding rights of collective bargaining and the right to strike.

In contrast stands the public interest in the enforcement of the Sherman Act and the public interest in a professional football season. These are actual, "live" interests, and they favor the denial of a stay of this Court's Order.

### D. Bond

In the event that the Court were to grant the NFL's motion for a stay, the Brady Plaintiffs requested that the NFL be required to post a bond in the amount of $1 billion to protect the Players' rights. (Doc. No. 110, at 21-22.) The League opposes this request on several grounds, arguing that it is inconsistent with the Players' position that their injuries are not fully compensated in monetary damages; that Plaintiffs' request for a "supersedeas bond" is procedurally incorrect; and that, because the NFL's solvency is not in question, a bond is unnecessary. (Doc. No. 114 (Defs.' Resp. to Pls.' Bond Request), at 1-2.) Because this Court denies the motion for a stay, the Brady Plaintiffs' request for the posting of a bond is moot.

### III. CONCLUSION

The NFL has not met it burden for obtaining a stay pending appeal, expedited or

otherwise.  The League has not made a sufficient showing that it is likely to succeed on

the merits.  More importantly, the equities strongly weigh against Defendants.  Staying

this Court's ruling would not subject Defendants to any harm that is distinguishable from

the "harm" faced by any litigant with or without a stay.  This Court's Order simply

enjoined the lockout.  Defendants are under no obligation to enter a new contract with any

player.  Conversely, the Players face the real and immediate harm of a lost season in a

typically short professional career.  Finally, the public interest in enforcing the Sherman

Act and in considering the wide-scale ramifications of a lost football season to the public

weighs in favor of denying the NFL's Motion for a Stay.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Defendants' motion for a stay pending appeal [Doc. No. 101] is **DENIED.**


Dated:   April 27, 2011                                      s/ Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge